UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CHARLES SCOTT,<br><br>Petitioner,<br><br>v.<br><br>STEWART SHERMAN, et al.,<br><br>Respondents. | No. 2:16-cv-1957 JAM KJN P<br><br><br>FINDINGS AND RECOMMENDATIONS |

I.     Introduction

Petitioner is a state prisoner, proceeding without counsel. He filed an application for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner challenges a 2012 judgment of conviction for cultivating marijuana, possession of marijuana for sale, possession of concentrated cannabis, maintaining a place for narcotic trafficking, and possession of matter depicting children engaged in sexual conduct. He was sentenced to 25 years-to-life in state prison. After careful review of the record, this court concludes the petition should be denied.

II.     Procedural History

Following his 2012 jury trial, petitioner was convicted of cultivating marijuana (Cal. Health & Saf. Code, § 11358), possession of marijuana for sale (Cal. Health & Saf. Code, § 11359), possession of concentrated cannabis (Cal. Health & Saf. Code, § 11357(a)), maintaining a place for narcotic trafficking (Cal. Health & Saf. Code, § 11366), and possession of matter

1

depicting children engaged in sexual conduct (Cal. Pen. Code, § 311.11(b)).  He was sentenced to 25 years-to-life on the first and fifth counts; sentences on the remaining counts were stayed (Cal. Pen. Code, § 654).  (LD No. 1.)

Petitioner's appeal to the Third Appellate District of the California Court of Appeal (LD Nos. 2-4) resulted in the following disposition:

> The judgment is modified to (1) reduce the criminal assessment imposed pursuant to Government Code section 70373, subdivision (a)(1) from $175 to $150, and (2) award defendant, in lieu of the 384 days originally received, 576 days of presentence custody credits, consisting of 384 actual days and 192 conduct days. As so modified, the judgment is affirmed. Th trial court is directed to (1) amend the abstract of judgment to reflect these modifications, and (2) correct section 1 of the abstract of judgment to reflect that defendant's sentence on count V is to run concurrent to his sentence on count I. …

(LD No. 5 at 13.)  Thereafter, the California Supreme Court denied his Petition for Review.  (LD Nos. 6 & 7.)

On June 1, 2015, petitioner filed a petition for writ of habeas corpus in the Tehama County Superior Court.  (LD No. 8.)  Respondent served its informal response on July 9, 2015. (LD No 9.) and petitioner filed a reply brief on August 3, 2015 (LD No. 10).  The Tehama County Superior Court denied the petition in an order dated September 16, 2015.  (LD No. 11.)

Subsequently, petitioner filed a habeas petition with the Third Appellate District in November 2015.  (LD No. 12.)  That court summarily denied the petition in an order dated January 22, 2016.  (LD No. 13; see also https:\\www.appellatecases.courtinfo.ca.gov [C080644].)

On February 29, 2016, a petition for writ of habeas corpus was filed with the California Supreme Court.  (LD No. 14; see also https:\\www.appellatecases.courtinfo.ca.gov [S232743].) The state's highest court summarily denied the petition on May 25, 2016.  (LD No. 15.)

On August 18, 2016, petitioner filed the instant petition and related points and authorities. (ECF Nos. 1 & 4.)  Respondent filed an answer to the petition on December 20, 2016.  (ECF No. 18.)  On February 13, 2017, petitioner filed his traverse.  (ECF No. 24.)

III.     Factual Background

The following facts are taken from the California Court of Appeal for the Third Appellate

2

District's unpublished decision filed October 31, 2014:

A. The Prosecution's Case

On June 17, 2011, Eric Clay, an investigator with the Tehama County District Attorney's Office and an expert in marijuana investigations, was looking at a Web site called "budtrader.com" when he came across a job listing for a kitchen worker for a marijuana edibles business in Red Bluff. The listing included the Web site address <www.buddbuzzard.com>. According to that Web site, Budd Buzzard produced and sold marijuana laced beef jerky, honey, and tinctures (a concentrated form of marijuana). The Web site listed defendant as the company's founder and described the business's recent expansion and purchase of a mobile kitchen. Clay performed an online records search for fictitious business filings and found defendant listed as the registered owner of Budd Buzzard Products based at 23410 Hillman Court in Red Bluff.

On June 22, 2011, Clay along with members of the Tehama Interagency Drug Enforcement Task Force (TIDE) executed a search warrant at 23410 Hillman Court in Red Bluff. The search included a residence and a 25–foot trailer located behind the residence.

The trailer contained a fully-enclosed industrial kitchen, complete with stainless steel appliances, a stove, a dehydrator, and a refrigerator. Officers also found two digital scales, several boxes of gallon-size Ziploc freezer bags, approximately 2,000 one-ounce baggies, and a sheet of Budd Buzzard's Jerky sticker labels.

The residence contained three bedrooms, two of which had been converted: one to an office and the other to a "hangout" or "party" room. It appeared that only defendant lived in the main residence. Inside the office officers found: three five-gallon buckets containing a liquid form of marijuana labeled "tincture" and "20–ounces to four gallons," two five-gallon buckets containing what appeared to be honey, a scale, a credit card scanner, invoices, business cards, sticker labels, and United Parcel Service (UPS) pouches. There were between 12 and 20 sales receipts and invoices found, some for "cannabis jerky" and "honey." The invoices were labeled Budd Buzzard Beef Jerky. One invoice, dated May 26, 2011, showed $100 cash was paid for one pound of jerky. A photocopy of a receipt dated June 2, 2011, showed $500 cash was paid for "24 tincture, six honey, and one pound jerky...."

The business cards read, "Budd Buzzard Products Makers of the Original Cannabis Beef Jerky. It is yummy good," and listed defendant's name, a phone number, and the Web site <www.buddbuzzard.com>. The back of the cards read, "We're now shipping throughout California and we pay for the shipping with orders totalling [sic] $200 or more. www.buddbuzzard.com. Beef jerky, $100 pound ... [(]32 times .5 bags equal one pound[)] ... Honey/Pot, $15 ... [(]Three-ounce jar[)] ... tincture, $15 each or four for $50 ... [(]One ounce bottles[)]."

3

The sticker labels had a picture of a marijuana leaf and read, "A Nor ... Cal product, $7 ... [ (]Two for $12[) ]" and "www.buddbuzzard.com."

Another document found in the office showed 100 shipping pouches had been ordered by "Budd Buzzard Products Tom" and received from a UPS shipping supply company.

Inside the kitchen of the main residence, officers found 38 gallon-size freezer bags, each of which contained 32 smaller bags of jerky. Each of the smaller bags was labeled, "Budd Buzzard Products, Jerky," and "half ounce." There were nine small bags of jerky that were not inside of a larger bag. Officers also discovered two amber-colored bottles of liquid with dropper tops and labels that said, "Budd Buzzard, Tincture Number 6"; two one-gallon containers full of a liquid substance, labeled "tincture" and "8 to 1"; various containers holding a sludge-like, green material that smelled like marijuana; a crock pot containing liquid and plant material that looked and smelled like marijuana; two vacuum heat sealers; and a container labeled "honey for jerky."

Inside the "hangout" room officers found 17 mason jars containing about one and one-half pounds of marijuana, a recipe for 100 pounds of marijuana jerky, and a breakdown of the cost to produce 100 pounds of marijuana jerky. Seven of the jars were labeled with the strain of marijuana inside. Officers also found various pipes and bongs.

There were two messages on the answering machine: one from a UPS representative concerning setting up an account to ship items; and another from a woman calling about marijuana jerky.

Outside officers discovered ten live marijuana plants, three of which were in the flowering stage.

Defendant returned home during the search and his car was searched. Officers found over 50 pounds of beef in the trunk. Defendant's wallet contained a credit card with his name and "Budd Buzzard Products," as well as shipping receipts indicating beef jerky had been shipped on June 15, 2011.

During the search, an employee who "work[ed] with the jerky" arrived at the residence. Completed timecards for "Gary" and "Marcos" were found in the office inside the residence. The first date that appears on the timecards is April 28, 2011, and the last date is May 3, 2011.

Law enforcement recovered a total of 38 pounds of beef jerky and over two pounds of usable marijuana from the residence, not including the tinctures and jerky. Forensic analysis of the jerky revealed the presence of Delta 9 tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana. Tincture taken from the residence also tested positive for Delta 9 THC. Testing of the honey was inconclusive. A usable amount of concentrated cannabis was found in the two dropper-top bottles, two gallon-size containers,

and other marijuana products in various stages of production.

Clay opined that while some of the marijuana may have been possessed for personal use, "overall, the marijuana, especially in the various forms of jerky, honey, tincture," was possessed for sale and defendant was operating a commercial enterprise. Clay based his opinion on, among other things, the shipping receipts, Web site presence, and shipping materials.

Two computers were seized from the residence. The hard drive of one of the computers contained 33 images of suspected child pornography. Many of the images depicted small children and undeveloped teens in sexual postures manipulating a male's erect penis or engaged in sexual intercourse or oral copulation.

B. The Defense

Dr. Marilyn Hulter, a board-certified anesthesiologist, who worked at the Cannabis Healing Clinic in Redding, testified for the defense. She examined defendant at the clinic in March 2011, when he was renewing his "Proposition 215 recommendation."[FN 3] Hulter determined defendant would benefit from the use of medical marijuana for pain relief and issued him a recommendation for the use of medical marijuana in the amount of two ounces per week. Two ounces per week equates to six and one-half pounds per year. Defendant told Hulter he gargled with a tincture made from marijuana and honey. He also told her he was making marijuana beef jerky for dispensaries.

> [FN 3: Proposition 215 refers to the initiative adopted by the votes that became the Compassionate Use Act (Health & Saf. Code, § 11362.5). (People v. Kelly (2010) 47 Cal.4th 108, 1012.)

Kirk Stockham, a computer forensics expert, testified that when a user deletes data on a computer it may go to unallocated space, which means it is no longer indexed by the computer but is left on the hard drive as raw data machine code. The pictures found on defendant's hard drive were in the unallocated space. The report used by the prosecution's expert indicated all 33 pictures relied on by the prosecution occupied the same byte space, which is not possible. Thus, the report relied on by the prosecution's expert was in error. It is not possible to determine how the pornographic images got into the unallocated space on defendant's hard drive.

(ECF No. 18-1 at 3-6.)

IV.    Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011)); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 569 U.S. 58, 64 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)).  Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id.  Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. at 411. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a '"firm conviction"' that the state court was '"erroneous."'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." Richter, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

////

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley v. Cullen, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 568 U.S. 289, 298-301 (2013) (citing Richter, 562 U.S. at 98). If a state court fails to adjudicate a component of the petitioner's federal claim, the component is reviewed de novo in federal court. Wiggins v. Smith, 539 U.S. 510, 534 (2003).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n.3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny

8

relief." <u>Richter</u>, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." <u>Id.</u> at 101. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013) (quoting <u>Richter</u>, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. <u>Stanley v. Cullen</u>, 633 F.3d at 860; <u>Reynoso v. Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006).

V.     <u>State Court Decision on Habeas</u>

The last reasoned rejection of petitioner's claims is the decision of the Tehama County Superior Court on the petition for writ of habeas corpus. On September 16, 2015, the state court denied petitioner's claims, as follows:

> Petition for Writ of Habeas Corpus is summarily DENIED.
>
> The California Supreme Court articulated the standards to be applied in habeas corpus petitions in <u>In re Clark</u> (1993) 5 Cal 4th 750, 765-766:
>
> "It is also the general rule that, issues resolved on appeal will not be reconsidered on habeas corpus (<u>In re Waltreus</u> (1965) 62 Cal.2d 218, 225 []), and, 'in the presence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction.' (<u>In re Dixon</u> (1953) 41 Cal.2d 756, 759 []; in accord <u>People v. Morrison</u> (1971) 4 Cal.3d 442, 443, fn. 1 []; <u>In re Black</u> (1967) 66 Cal.2d 881, 886-887 []; <u>In re Shipp</u> (1965) 62 Cal.2d 547, 551-553 [].)" (<u>In re Walker</u> (1974) 10 Cal.3d 764, 773 [].) "Without this usual limitation of the use of the writ, judgments of conviction of crime would have only a semblance of finality." (<u>In re McInturff</u> (1951) 37 Cal.2d 876, 880.)
>
> ***
>
> The rule is similar when a petition attributes the failure to discover and present the evidence at trial, to trial counsel's alleged incompetence. The presumption that the essential elements of an accurate and fair proceeding were present is not applicable in that case, as it is when the basis on which relief is sought in newly

9

discovered evidence. (Strickland v. Washington (1984) 466 U.S. 668, 694 []; People v. Gonzales (1990) 51 Cal.3d 1179, 1246.) Nonetheless, the petitioner must establish "prejudice as a 'demonstrable reality,' not simply speculation as to the effect of the errors or omissions of counsel. [Citation.] … The petitioner must demonstrate that counsel knew or should have known that further investigation was necessary and must establish the nature and relevance of the evidence that counsel failed to present or discover." (People v. Williams (1988) 44 Cal.3d 883, 937 [].) Prejudice is established if there is a reasonable probability that a more favorable outcome would have resulted had the evidence been presented, i.e., a probability sufficient to undermine confidence in the outcome. (Strickland v. Washington, supra, 466 U.S. at pp, 693-694; People v. Williams, supra, 44 Cal.3d at pp. 944-945.) The incompetence must have resulted in a fundamentally unfair proceeding or an unreliable verdict. (Lockhart v. Fretwell (1993) 506 U.S. 364, 372.)

As for the substance of this petition, the grounds stated in the petition are issues which could have been stated on appeal, and could have been, or were, considered by the appellate court. Absent some justification, issues subject to appellate review may not be presented in a Petition for Writ of Habeas Corpus. (In re Clark, supra, 5 Cal.4th at p. 765.)

The remaining issues concern the alleged incompetence of trial and appellate attorneys. Petitioner has not shown that counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocates. (Strickland, supra, 466 at pp. 687-688.) Secondly, petitioner did not demonstrate that it is reasonably probable a more favorable result would have been obtained in the absence of counsels' failings.

Based on the pleadings of this case the court also finds that the petition fails on the merits.

(LD No. 11 [citations corrected for accuracy & continuity in formatting].)

VI.     Petitioner's Claims

In his August 18, 2016, petition for writ of habeas corpus, petitioner asserts the following claims for relief:  (1) denial of a complete defense; (2) prosecutorial misconduct; (3) insufficient evidence; (4) instructional error; (5) ineffective assistance of trial counsel for failure to challenge the search warrant and move to suppress evidence; (6) ineffective assistance of trial counsel for failure to present mistake of fact defense and request pinpoint jury instruction; (7) ineffective assistance of trial counsel for failure to challenge search of computer and move to suppress evidence; (8) ineffective assistance of appellate counsel for failing to raise meritorious claims on appeal; (9) cumulative error; (10) denial of due process by superior court for failing to issue the

writ or an order to show cause; and (11) procedural error by sentencing court for refusing to hear motion for new trial. (ECF No. 1.)  The petition is supported by a memorandum of points and authorities filed on the same date.  (ECF No. 4.)

**Procedural Default**

A federal court will not review a petitioner's claims if the state court has denied relief on those claims pursuant to a state law procedural ground that is independent of federal law and adequate to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  This doctrine of procedural default is based on the concerns of comity and federalism.  Id. at 730-32. Nonetheless, there are limitations as to when a federal court should invoke procedural default and refuse to review a claim because a petitioner violated a state's procedural rules.  Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a procedural bar."  Harris v. Reed, 489 U.S. 255, 263 (1989).

"The general rule is that habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not raised upon a timely appeal from a judgment of conviction."  In re Dixon, 41 Cal.2d 756, 759 (1953); In re Harris, 5 Cal.4th 813, 829 (1993).  The Supreme Court has recognized the Dixon rule a "adequate to bar federal habeas review."  Johnson v. Lee, 136 S. Ct. 1802, 1806 (2016).  However, a petitioner may obtain federal review of a procedurally defaulted claim by demonstrating either "(1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'"  Jones v. Ryan, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting Coleman v. Thompson, 501 U.S. at 750).

However, a reviewing court need not invariably resolve the question of procedural default prior to ruling on the merits of a claim.  Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997); see also Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same"); Busby v. Dretke, 359 F.3d 708, 720 (5th Cir. 2004) (noting that although the question of procedural default should

ordinarily be considered first, a reviewing court need not do so invariably, especially when the issue turns on difficult questions of state law).  Where deciding the merits of a claim proves to be less complicated and less time-consuming than adjudicating the issue of procedural default, a court may exercise discretion in its management of the case to reject the claim on the merits and forgo an analysis of procedural default.  See Franklin, 290 F.3d at 1232 (citing Lambrix, 520 U.S. at 525, 117 S.Ct. 1517).

In this case, the undersigned elects to address the merits of petitioner's claims.

**Preliminary Matter**

To the degree petitioner argues throughout his petition that the various state courts, and, in particular, the California Supreme Court, by virtue of issuing a summary denial of his claims have failed to adequately review the record and address those claims, his argument is unavailing.  A summary denial is presumed to be a denial on the merits of petitioner's claims.  Stancle v. Clay, 692 F.3d at 957 n.3.  And, absent a showing that "there is reason to think some other explanation for the state court's decision is more likely" – a showing that was not made based upon the undersigned's independent review – the presumption remains.  Richter, 562 U.S. at 99-100.

A. *Denial of Complete Defense*

Petitioner contends he was denied a complete defense when the trial court refused to permit him to present a defense under California Health and Safety Code section 11362.775, which protects qualified individuals who associate to cultivate medical marijuana.  He claims he met his burden of production at the California Evidence Code section 402 hearing[1] and was entitled to present such a collective or cooperative cultivation defense at trial.  (ECF No. 4 at 8-24.)  Respondent argues petitioner's claim is procedurally barred and that the claim was not unreasonably denied because petitioner did not sustain his burden of presenting preliminary facts to support an MMPA defense other than that of a qualified patient.  (ECF No. 18 at 17-29.)

////

---

[1] A section 402 hearing provides a procedure whereby a court may determine, outside the jury's presence, whether there is evidence offered sufficient to establish the elements of a defense.  See People v. Galambos, 104 Cal.App.4th 1147, 1156 (2002).

## The Relevant Law and Proceedings

Petitioner is entitled to "a meaningful opportunity to present a complete defense," <u>Crane v. Kentucky</u>, 476 U.S. 683, 690 (1986), and "states may not impede a defendant's right to put on a defense by imposing mechanistic ... or arbitrary ... rules of evidence," <u>LaGrand v. Stewart</u>, 133 F.3d 1253, 1266 (9th Cir. 1998). Nonetheless, "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." <u>United States v. Scheffer</u>, 523 U.S. 303, 308 (1998); <u>see also</u> <u>Montana v. Egelhoff</u>, 518 U.S. 37, 53 (1996) ("the introduction of relevant evidence can be limited by the State for a 'valid' reason").

California Health and Safety Code section 11362.775 provides, in pertinent part:

> (a) Subject to subdivision (d), qualified patients, persons with valid identification cards, and the designated primary caregivers of qualified patients and persons with identification cards, who associate within the State of California in order collectively or cooperatively to cultivate cannabis for medicinal purposes, shall not solely on the basis of that fact be subject to state criminal sanctions under Section 11357, 11358, 11359, 11360, 11366, 11366.5, or 11570.

> (b) A collective or cooperative that operates pursuant to this section and manufactures medicinal cannabis products shall not, solely on the basis of that fact, be subject to state criminal sanctions under Section 11379.6 if the collective or cooperative abides by all of the following requirements: …

"The [Medical Marijuana Program Act or] MMPA provides a defense when a defendant shows that members of the collective or cooperative: '(1) are qualified patients who have been prescribed marijuana for medicinal purposes, (2) collectively associate to cultivate marijuana, and (3) are not engaged in a profit-making enterprise.'" <u>People v. Baniani</u>, 229 Cal.App.4th 45, 59 (2014). A defendant bears a minimal burden to produce sufficient evidence to raise a reasonable doubt as to whether the elements of the defense have been established. <u>People v. Jackson</u>, 210 Cal.App.4th 525, 533 (2012). Once the defendant establishes a reasonable doubt as to the existence of the defense and that burden is met, the trial court must provide the instruction and inform the jury the prosecution has the burden to disprove the defense beyond a reasonable doubt. <u>People v. Orlosky</u>, 233 Cal.App.4th 257, 269 (2015).

The MMPA allows a qualified patient or primary caregiver to supply marijuana to a cooperative or collective if the patient or caregiver is a member of the cooperative or collective and does so on a nonprofit basis.  People v. Anderson, 232 Cal.App.4th 1259, 1277–78 (2015). It does not permit sales for profit between members of the same collective who each have a doctor's recommendation, nor to any other person or entity.  Cal. Health & Saf. Code, § 11362.765(a); see also People v. Baniani, 229 Cal.App.4th at 61 (under MMPA, "sales for profit remain illegal"); People v. London, 228 Cal.App.4th 544, 553-54 (2014); People v. Solis, 217 Cal.App.4th 51, 54 (2013) (defendant who admitted receiving $80,000 in personal income from marijuana collective not entitled to MMPA instruction); People v. Jackson, 210 Cal.App.4th at 538 ("there is little doubt the Legislature did *not* intend to authorize [MMPA] profit-making enterprises"); People v. Colvin, 203 Cal.App.4th 1029, 1040-41 (2012) ("'[a]ny monetary reimbursement that members provide to the collective or cooperative should only be an amount necessary to cover overhead costs and operating expenses'"); People v Hochanadel, 176 Cal.App.4th 997, 1009 (2009) ("The MMPA … specifies that [individuals,] collectives, cooperatives or other groups shall not profit from the sale of marijuana").

Here, the People moved to exclude references to medical marijuana "until such time that the defendant has proved the existence of preliminary facts necessary for the presentation of a medical marijuana defense." (1 CT 30-38, 44.)  At the hearing on the original motion, petitioner's counsel advised the court that it was petitioner's position that any person who holds a recommendation permitting use of marijuana is entitled to sell products containing marijuana to any other person with such a recommendation or to any dispensary. (1 RT 213.)  Holding such a recommendation, petitioner consulted an attorney who advised him it was legal to sell to others and dispensaries provided he did not make a profit, and that if he made a profit, he would need to be a legal business entity in order to pay state and federal taxes on any possible profit. (1 RT 214, 217-18.)  Petitioner later claimed the marijuana found at his residence was entirely for his personal use. (1 RT 219-20.)

In considering the motion, the court engaged in a colloquy with both parties, asking questions to ensure his understanding of each party's position and seeking clarification where

14

necessary.  This exchange occurred just prior to the court's ruling:

> [THE COURT]:  With regard to 11362.775, again, you have the distinction here of primary caregivers; also in 11362.765, qualified patient, individual providing assistance to a qualified patient, et cetera.  We've already addressed the issue of primary caregiver, so 11362.765(c) does not apply.
>
> I haven't heard anything regarding any offer of proof as to (b)(3) regarding - -
>
> MR. McIVER:  There would be - - There would be none, your Honor.
>
> THE COURT:  All right; so that is not an issue.
>
> Two, again, does not apply as a designated primary caregiver; it only, it sounds to me, looks like it's an issue of qualified patient under 11362.765.
>
> And, again, Mr. Waugh, that gets back to the Court's original concern with the CUA; that what it sounds like to me is the only defense that arguably could be presented at this point by Mr. Scott is a qualified patient under 765, and 11362.5 for the  CUA as a patient, which would take out any other even inking of a defense regarding the commercial aspect.
>
> MR. WAUGH:  The People - - The People agree with the Court that the only possible defense he has under the medical marijuana law is - - whether that be 11362.5 or 11362.7 - - would be as a qualified patient himself.
>
> THE COURT:  All right. What about, Mr. McIver, your client's ability to meet the definition of someone that holds an identification card?  Is he that person?  (At this time there was discussion between Mr. McIver and the Defendant outside the hearing of the Reporter.)
>
> MR. McIVER:  My client does not hold an identification card, your Honor.
>
> THE COURT:  All right.
>
> All right.  Mr. Waugh, Mr. McIver, that brings us to basically the end here.  It sounds to me, based on what I've heard as far as the offer of proof, as well as the argument of the parties, that the only issue that technically could at this point arguably be presented to the jury would be whether Mr. Scott has a defense under 11362.5 of the CUA regarding his personal use as a patient, and 11362.765(b)(1), qualified patient, not person with identification card, and 11362.775, qualified patient.
>
> (At this time there was discussion between Mr. McIver and the Defendant outside the hearing of the Reporter.)
>
> THE COURT:  Do you see what I'm talking about, Mr. Waugh?

15

MR. WAUGH: Your Honor, I believe 11362.775, while it does discuss qualified - - excuse me - - qualified patients, I believe it is a specific section regarding cooperatives and collectives.

THE COURT: Correct.

MR. WAUGH: -- which there's no - - there's nothing to suggest that is appropriate.

THE COURT: Well, Mr. Scott - - or Mr. McIver, I believe, had said that to the extent - - after the break when he met with his client - - he was going to be presenting evidence on something regarding any of the products that were found; that he was a qualified patient associated with a collective that he was a member of. That's why I brought up 11362.775.

MR. WAUGH: And it would certainly be the People's contention that it would require more in the way of proof than simply Mr. Scott taking the stand and offering the testimony that he is, in fact, a member of these various locations.

THE COURT: Mr. McIver, I would agree with that; that there would have to be something beyond your client's statement that for that to actually be put on in front of a jury even to raise an issue of reasonable doubt. Is the offer of proof that the collective is going to be established at trial and your client's membership therein?

MR. McIVER: It would be established by my client's testimony, your Honor. I would remind the Court that there's a very early case of a patient who said "I'm" - - "A doctor recommended I use marijuana," and there was nothing written. That satisfied the burden of proof for instructions on medical marijuana. I think this is a very comparable situation.

THE DEFENDANT: Excuse me, your Honor. Can I say something to my attorney?

THE COURT: You can speak to your attorney, sir; certainly.

(1 RT 225-28.) After further argument, the court found that as to personal use, petitioner was entitled to the defense provided by the CUA. (1 RT 228-34.) Thereafter, the court summarized its ruling:

THE COURT: … For purposes of the 402, the offer of proof by way of the Defendant's testimony, as well as what allegedly the doctor, which will apparently state that he is qualified patient or she gave him a recommendation - - Assuming that that testimony does, in fact, happen at trial, depending on what happens to that testimony, I will allow that for purposes of trial.

The Court is not saying whether or not there will be any instruction given to the jury. That is only on the issue under 11362.5 to the extent that there will be any immunity for 11357 and 11358 as a

16

patient - - not for primary caregiver, not for any other purposes. That is all marijuana possessed - - products that may be by-products of marijuana or growing marijuana, period.

The same ruling with respect to 11362.765 and the enumerated sections that are covered as far as an affirmative defense under Subdivision (a), with respect to Mr. Scott as to being able to put that defense on, again, that is contingent upon his testimony to that extent, as well as the doctor establishing that he is a qualified patient under (b)(1); (b)(2), regarding designated primary caregiver, does not apply; and (c) does not apply as to a primary caregiver receiving compensation.

As to 11362.775, because the Defendant has not sustained an offer of proof that is acceptable to the Court at this time, the Defendant will not have the benefit of 11362.775 regarding association collectively or cooperatively to cultivate marijuana of medicinal purposes.

…………………………………………………………………………….

MR. McIVER: And is the Court's ruling that that applies only to Count I and III, your Honor?

THE COURT: Well, Mr. McIver, the CUA, 11362.5, specifically - - Unless you have some authority to the contrary, my understanding is it applies to 11357 or 11358, does it not?

MR. McIVER: It does.

THE COURT: And only those two. So as to the CUA, you're looking at 11357(a) charge, which is Count III, and 11358 as to Count I. …

All right, Counsel, as to the 11362.765 issue, we've already discussed the fact that we're only talking about a qualified patient, not a person with an I.D. card. And (b)(2), (b)(3), and (c) do not apply.

The statutes that could be prosecuted, and would then have perhaps a defense to, are listed as 11357, 358, 359, 360, 366, 366.5, and 570. That is markedly different than the CUA. So that would apply to those to the extent - - how the evidence plays out.

Counsel, I want to make something clear here: Mr. Waugh, Mr. McIver, I am not requiring that Mr. Scott take the stand. What I'm saying is that his - - the offer of proof that his testimony would be that, is enough for me not to say "Okay; it's cut off here and it's not going in front of the jury." Whether he testifies to that or not, that's up to him. Whether the doctor comes in or not, that's up to the doctor and subpoenas. I'm not saying that's the only way. Mr. Waugh, Mr. McIver, you will be able to address then when, and if, the evidence, is to be presented at trial, how that defense might be established. For purposes of 402, it would be enough to at least get that on for a primary - - or excuse me - - a qualified patient defense.

1    Do you understand my ruling?

2    MR. McIVER:  Not entirely, your Honor.  Is the Court - - Does the Court's ruling apply to all of the charged counts?

3

4    THE COURT:  Mr. McIver, my only point in reading the applicable language out of 362.5 was to say that Subdivision (d) of the CUA applies to 357 and 358.  It is very clear that the MMPA, by way of 765, Subdivision (a), says specifically those sections - - 11357, up and to 11570.  So to the extent that it is a personal use defense, or a qualified patient for his purposes, it would apply to those.  To the extent that the People are able to prove to the contrary, that any of those offenses have been committed beyond a reasonable doubt and outside of that, that the jury does not find, if the affirmative defense goes to them - - That is what it is, so to speak.

5

6

7

8

9    Do you understand that, Mr. McIver?

10   MR. McIVER:  Not entirely, your Honor.  Is the Court going to allow us to put on a defense based on my client's belief that since he holds a recommendation from a licensed physician, that he is entitled to sell marijuana products - -

11

12   THE COURT:  No.

13   MR. McIVER:  - - products containing marijuana to other patients who hold recommendations or to dispensaries?

14

15   THE COURT:  No.

16   MR. McIVER:  All right.

17   THE COURT:  No, because that would fall under 775, and I have not heard an adequate offer of proof pursuant to 402, at this 402 hearing, to present that.  The only – At this point, based on the offer of proof that I've had, the only thing he is going to be allowed to present under the CUA and the MMPA - - the CUA specifically, that he is a patient, and that would be for his own personal needs, not for someone else, because he's not a primary caregiver, and 11362.765, Subdivision (b)(1), a qualified patient - - I.D. card does not apply, as we discussed - - who transports or processes marijuana for his own personal medical use. That is the limit of his defense at this point, based on the offer of proof that I have heard.

18

19

20

21

22

23   MR. McIVER:  One last question your Honor - - or one additional question.

24

25   THE COURT:  Sure.

26   MR. McIVER:  If my client were able to establish that he were a member of a dispensary or collective and that he sold marijuana products, products containing marijuana, to that dispensary, would the Court then allow and instruct on medicinal marijuana defense as to Counts - - certainly Count II - - as to Count II?

27

28

1    THE COURT:  Mr. Waugh?

2    MR. WAUGH:   Your Honor, it's the People's position that
     regardless of whether or not he is a member of a collective or
3    cooperative, that would be the exchange of marijuana for money,
     which is not protected.
4
     THE COURT:   Mr. McIver, under 11362.775, which is really
5    where that defense arises from, in essence - - 11362.765 at the end
     of (a) says that nothing - - or excuse me - - "nor shall anything in
6    this section authorize any individual or group to cultivate or
     distribute marijuana for profit," although the beginning of that
7    sentence says, "However, nothing in this section shall authorize the
     individual to smoke or otherwise consume marijuana unless
8    otherwise authorized by this article."

9    The way I read that, Mr. McIver, is that statutes have to be read in
     their context in relation to each other.  And it would be absurd to
10   think that under 11362.765 Mr. Scott, or others in a similar
     situation, would not be allowed to sell marijuana for profit but
11   would be allowed to do so under 775, and as such, he is not going
     to be able to present that defense based on the offer of proof that
12   I've heard regarding him receiving money and things such as that.

13   MR. McIVER:  I understand the Court's ruling, your Honor.

14   THE COURT:   All right.  I tried to be concise; however, it may
     have been convoluted.
15

16   (1 RT 235-41.)  The court concluded that the MMPA was "not coming in as far as a defense."  (1

17   RT 244.)

18        To summarize the original hearing on the People's first motion in limine, the trial court

19   denied petitioner the MMPA defense because petitioner's own offer of proof included his belief

20   that he could *sell* marijuana to other qualified patients or dispensaries for a profit.  More

21   particularly, petitioner argued at the 402 hearing that he could do so and that any profit would be

22   subject to state and federal taxes. (1 RT 213-14, 217-18.)

23        Petitioner fared no better when the prosecutor filed a later motion in limine to preclude

24   petitioner's reliance upon the MMPA defense.[2]  (1 CT 52-59, 90.)  Specifically, the People asked

25   "that the Court limit and entirely restrict all mention of the medical marijuana until such time as

26   the Defense has established and met their burden …" (1 RT 273.)  Defense counsel responded

27   _____

28   [2] By this time, new counsel had been appointed to represent petitioner at trial.  (1 RT 262.)

                                                19

that petitioner had "a Proposition 215 recommendation" from a doctor and that "additional information has been discovered that this Defendant also has been working with and is a member of a number of collectives and cooperatives," arguing "[i]f the Defendant claims that he is in fact a Proposition 215 medical marijuana qualified patient, and he is also a member of a collective or cooperative, I think it is the jury's opportunity to hear the evidence with regards to each of those issues, and then they get to make the decision …." (1 RT 274.)  The People replied that no evidence to that point had been offered, and that "until that is done, we would ask that there be no mention of medical marijuana or the medical marijuana laws or defenses." (1 RT 275.)  Defense counsel then offered "the physician's statement under Proposition 215" and a "Healing Health Center Collective membership" completed by petitioner, asserting "there is evidence here" establishing petitioner held a recommendation for marijuana use and was a member of a collective or cooperative.  (1 RT 275-76.)  The trial court then ruled as follows:

> All right.  I am going to grant the People's motion in limine.  All references to medical marijuana will be excluded during trial until the Defendant has proved the existence of the preliminary fact necessary to present the medical marijuana defense.  That can be done at a 402 hearing outside the presence of the jury.

(1 RT 276.)

The trial court did not foreclose all possibility of petitioner's raising the MMPA defense.  Rather, the court ruled that until the defense had met its burden of proving it was entitled to the defense, references to "medical marijuana" were not permitted.

During trial, on May 24, 2012, defense counsel requested a 402 hearing and Marilyn Hulter, M.D. testified as a potential expert witness.  (1 CT 145; 3 RT 666-734.)  She issued a recommendation to petitioner for his marijuana usage at two ounces per week or 104 ounces per year. (3 RT 685-87.)  Where patients use edibles a greater amount of marijuana is required than one who smokes it; her recommendation as to use is based on a patient's reported use and her thoughts on how much they "ought to be using." (3 RT 693-94, 696.)  Petitioner told Dr. Hulter he was "making beef jerky" and she thought "it was a great idea." (3 RT 692.)  She also believed the "gargling thing" with marijuana "soaked [] in honey" would have "anti-inflammatory effects and pain relief without having any psychoactive effects." (3 RT 692-93.)

Defense counsel argued Dr. Hulter should be permitted to testify as an expert witness "in the field of the use of medicinal marijuana for treatment of pain" and that she provided petitioner "with a Prop 215 recommendation," allowing for the presentation of "that defense to the jury." (3 RT 698.) The People countered that while petitioner has a recommendation, there was "nothing to establish that the amount he possessed was in any way reasonably related to his current medical needs, which is, of course, one of the necessary steps in any sort of defense under the medical marijuana laws," and that the doctor had only brief contact with petitioner. (3 RT 698-99.) The trial court ruled as follows:

> THE COURT: All right. [¶] The defendant raises a defense under the Compassionate Use Act. Accordingly, he has the burden of producing evidence as to a preliminary fact, that is, there was a Proposition 215 recommendation issued by a licensed physician.
>
> I have heard from Dr. Hulter; she did so testify that she issued such a recommendation.
>
> The defendant must produce evidence at a Section 402 hearing sufficient to raise a reasonable doubt as to whether the defendant has a physician's approval to use marijuana. My function at this 402 hearing is to determine whether there is sufficient evidence to permit the jury to decide the question. That is the defense.
>
> So I am going to allow the defendant to have the doctor testify as to the recommendation. I am not denying him his Compassionate Use Act defense.

(3 RT 699-700.) Thereafter, Dr. Hulter testified in front of the jury. (3 RT 700-35.) She testified similarly, noting petitioner's use of a "cold curing tincture" that was a "mixture of honey and marijuana" (3 RT 712-13), her issuance of a recommendation (3 RT 713-15), her opinion that petitioner benefitted from the use of medical marijuana (3 RT 715, 720), that more marijuana is required when a patient is using edibles and tinctures (3 RT 716-17), and that her recommendation called for the use of two ounces a week, or 104 ounces per year, or just over six and a half pounds per year (3 RT 717-18). On cross-examination, Dr. Hulter testified the recommendation she issued on March 8, 2011, to petitioner was for his own personal use (3 RT 724), that the "patient's individual use plays a large factor in [her] determination as to how much

[marijuana use] to recommend" (3 RT 725), and that petitioner "said he was making beef jerky for dispensaries" (3 RT 728-29).  Following the conclusion of Dr. Hulter's testimony, and outside the presence of the jury, defense counsel advised the court that petitioner had elected not to testify.  (3 RT 735-36.)  No further argument was had concerning the CUA or MMPA defense. The court and counsel met concerning jury instructions; no argument occurred concerning the CUA or MMPA defense as it related to the instructions to be given.  (3 RT 754-759.)

      In his closing argument to the jury (3 RT 768-79), defense counsel referenced petitioner's medical marijuana defense to the marijuana-related charges he faced:  (1) "when an individual has a recommendation for marijuana under the SB 420, Senate Bill 420, they are allowed to have up to twelve immature plants and eight ounces of processed marijuana from the dried female flower.  That was certainly what was there and under that limit" (3 RT 771); (2) "We come down to maintaining a place for sales or use of marijuana.  If you're doing something that doesn't involve the possession of sales or possession of concentrated cannabis or the cultivation of marijuana, does the maintaining place or opening of a place or use and possession or sales of marijuana exist?" (3 RT 775); and (3) noting the jury instruction defining marijuana as it applied to some of the items founds in petitioner's home (3 RT 777-78).

      In rebuttal, the People argued "nothing in the [jury] instructions" allow "for possession for sale where a recommendation was any sort of defense of possession for sale."  (3 RT 782.) Noting the possibility of a defense for cultivating or planting marijuana, the prosecutor read the relevant instruction to the jury and contended that petitioner "may arguably, at least in terms of you getting to hear about it, have a defense as to cultivation.  But keep in mind it has to be related to his own personal needs, must be reasonably related to his ailments."  (3 RT 782.)  Recalling the specific evidence found at petitioner's home, the prosecutor asserted the amounts found were "not possessed for personal use.  This quantity was not reasonably related to [his] medical needs."  (3 RT 782-83.)  He further argued that petitioner's recommendation "is not a defense in any way" to maintaining a place for the use or sale of a controlled substance" (3 RT 783) nor is it a defense to the charge concerning concentrated cannabis because "it must be possession for his own personal medical use and it must be in an amount reasonably related to his personal medical needs.  Based

upon the evidence, that simply is not what we have." (3 RT 783.)

The jury was instructed as agreed by the court and counsel. (3 RT 786-10.) More particularly, the jury was instructed regarding the CUA as to the possession for cultivation of marijuana count (3 RT 799-800), the lesser-included possession of marijuana (3 RT 802), and possession of concentrated cannabis count (3 RT 803-04). The relevant portion of those instructions read as follows:

> [Reference to the specific crime as noted above] is lawful if authorized by the Compassionate Use Act. The Compassionate Use Act allows a person to [cultivate or possess] marijuana for personal medical purposes when a physician has recommended or approved such use. The amount of marijuana possessed must be reasonably related to the patient's current medical needs.

The jury began its deliberations on May 24, 2012. When proceedings resumed the following day, outside the presence of the jury, petitioner addressed the court, against the advice of counsel, regarding certain instructions to the jury. Petitioner argued that he believed the CUA defense also applied to the counts pertaining to possession of marijuana for sale and maintaining a place for sales. He further argued the jury should have been instructed pursuant to the MMPA defense as to each count. Petitioner asked that the jury be brought in and instructed as requested. (3 RT 816-18.) The court responded by stating, in relevant part, "I have already charged the jury. I have given them instructions. They have the instructions that I feel are appropriate and lawful. I am not going to give them any further instructions …." (3 RT 818.) Later that day, the jury found petitioner guilty of all counts.[3] (3 RT 822-25; CT 153-57.)

Analysis

The undersigned's review of the record supports the California Supreme Court's determination; it is not contrary to, nor does it involve an unreasonable application of, Supreme Court precedent. Nor does it involve an unreasonable determination of the facts. (28 U.S.C. § 2254(d)(1) & (2).

---

[3] The jury reached its guilty verdicts concerning the cultivation of marijuana, possession of marijuana for sale and possession of concentrated cannabis on May 24, 2012 (CT 153-55); it reached its guilty verdicts for maintaining a place for the sale of a controlled substance and possession of child pornography on May 25, 2012 (CT 156-57).

The MMPA provides a defense when a defendant shows that members of the collective or cooperative: (1) are qualified patients who have been prescribed marijuana for medicinal purposes, (2) collectively associate to cultivate marijuana, and (3) are not engaged in a profit-making enterprise. People v. Baniani, 229 Cal.App.4th at 59.

Neither the CUA nor the MMPA permit a patient's sale of marijuana. People v. Joseph, 204 Cal.App.4th 1512, 1521 (2012) ("The CUA does not authorize medical marijuana patients or their primary caregivers to engage in sales of marijuana"); People v. Hochanadel, 176 Cal.App.4th at 1009 ("The MMPA … specifies that [individuals,] collectives, cooperatives or other groups shall not profit from the sale of marijuana").

To begin, petitioner does not qualify as a "primary caregiver" pursuant to the statute. That is, one "who has consistently assumed responsibility for the housing, health, or safety of" a qualified patient. (Cal. Health & Saf. Code, § 11362.7(d).) He acknowledged as much during the motion proceedings. (1 RT 219 ["He is not" a primary caregiver], 221 ["Your client is not claiming that he is a primary caregiver"], 226 ["We've already addressed the issue of primary caregiver, so 11362.765(c) does not apply"].)

Here, petitioner made no offer of proof at trial that all members of the collectives to which he claimed membership involved qualified patients prescribed marijuana for medicinal purposes.[4] Rather, he established he alone was one such qualified patient. Petitioner offered no evidence that his business operated as a non-profit corporation or even on a non-profit basis. Thus, his case is unlike those presented in either Jackson, or Baniani.

Further, there was no offer of proof that petitioner collectively associated with others in dispensaries or collectives to cultivate marijuana. Rather, there was evidence proffered by the People that petitioner hired an individual to help with cultivation and clerical tasks at his business. Even assuming hiring an individual to cultivate marijuana does not bar the defense, petitioner did not meet the third requirement of the defense, to wit: that he was *not* engaged in a

---

[4] While petitioner offered to establish he was "a member of a number of collectives and cooperatives" (1 RT 274; ECF No. 4 at 10) that element alone would not serve to entitle him to the MMPA defense. Moreover, petitioner did not testify at trial and no such evidence was offered. (3 RT 735.)

for-profit enterprise. During the first 402 hearing, in fact, petitioner's offer explicitly stated his belief a profit could be made. (1 RT 213-14, 217-18.) During the hearing on the People's second motion in limine, and at the 402 hearing held during trial, petitioner made no offer of proof that his business was registered as a non-profit.[5] See Baniani, 229 Cal.App.4th at 50 (defendant was a founding member of a medical marijuana cooperative set up as a not for profit corporation). Further, there was no offer of proof that petitioner had formed a non-profit group wherein the group members paid one another or received compensation and reimbursement from each other in amounts necessary to cover the overhead costs and operating expenses of cultivation to group members. London, 228 Cal.App.4th at 559-61.

Petitioner's reliance on People v. Orlosky, 233 Cal.App.4th 257 in support of his argument here is misplaced. The facts in Orlosky are readily distinguishable from this case, making its outcome inapplicable. In that case, two qualified patients engaged in informal cultivation of marijuana, to grow and share it only among themselves for medical purposes. They did not distribute the marijuana to any other person. Id. at 260-64. In contrast, even assuming petitioner and his employee had an informal agreement to cultivate and share marijuana amongst themselves – a situation that would provide a defense – petitioner stepped outside that otherwise acceptable agreement by distributing marijuana to others, whether dispensary or individual. The MMPA does not permit sales to others for profit. Anderson, 232 Cal.App.4th at 1277-78; Baniani, 229 Cal.App.4th at 61; London, 228 Cal.App.4th at 553-54; Solis, 217 Cal.App.4th at 54; Jackson, 210 Cal.App.4th at 538; Colvin, 210 Cal.App.4th at 1040-41; Hochanadel, 176 Cal.App.4th at 1009.

Nor does People v. Urziceanu, 132 Cal.App.4th 747 (2005) help petitioner. There, the appellate court determined the defendant was entitled to the MMPA defense because

> [h]e presented the court with evidence that he was a qualified patient, that is, he had a qualifying medical condition and a

---

[5] In his traverse or reply, petitioner makes the curious claim that "the profit making element was abandoned prior to trial, thus, it was never argued at trial." (ECF No. 24 at 9.) A defendant claiming entitlement to the MMPA defense must establish he was not engaged in a profit-making enterprise. Baniani, at 59. Hence, it was petitioner's initial burden to meet. He cannot "abandon" the requirement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> recommendation or approval from a physician. … Defendant further presented evidence of the policies and procedures FloraCare used in providing marijuana for the people who came to him, including the verification of their prescriptions and identities, the fact that these people paid membership fees and reimbursed the defendant for costs incurred in the cultivation through donations. Further, he presented evidence that members volunteered at the cooperative.

Id. at 786.  Here, petitioner presented evidence only as to his qualified patient status based upon qualifying medical conditions and a Dr. Hulter's recommendation.  Unlike the defendant in Urziceanu, he did not operate a cooperative or collective, did not present any evidence related to any cooperative or collective save for his own membership, nor did he offer evidence of any policies or procedures used in providing marijuana to qualified patients who were a part of that collective or cooperative.  Finally, he made no offer to present evidence that monies he received were reimbursement for costs incurred in cultivation.  The fact and circumstances in Urziceanu are distinguishable and, therefore, not applicable.

Lastly, the record establishes, as respondent asserts, there was more than sufficient evidence indicating sales for profit by petitioner, including "sales receipts, price sheets, shipping information, labels" (ECF No. 18 at 29) and the information reflected on petitioner's Budd Buzzard website.

In sum, while petitioner was a qualified patient, petitioner's business was not a legally organized collective or cooperative.  To the degree petitioner could be said to have informally cultivated marijuana with his employee, the MMPA defense was not available to him once he shared it with others outside his informal collective.  Moreover, accepting petitioner's offer of proof that he was a member of collectives or cooperatives to which he provided marijuana, he made no offer of proof that those entities were not-for-profit entities, or that his own business was a non-profit, or that any effort was undertaken to verify the eligibility of any entity or individual with whom he was in contact.  Therefore, petitioner did not meet his burden of a reasonable doubt as to each element of the MMPA defense.  Hence, petitioner was not denied a complete defense in violation of his constitutional rights.  Crane, 476 U.S. at 690.

////

To conclude, the California Supreme Court's determination that petitioner was not entitled to a defense pursuant to California Health & Safety Code section 11362.775 was not unreasonable, nor is it contrary to federal precedent, nor does it involve an unreasonable determination of the facts, because petitioner failed to raise a reasonable doubt that each of the elements of the defense had been established. 28 U.S.C. § 2254. The undersigned recommends the claim be denied.

B. *Prosecutorial Misconduct*

Petitioner also contends the prosecutor committed misconduct by making "untrue, misleading and deceptive statements to persuade" the court to deny him the MMPA defense. (ECF No. 4 at 25-34; ECF No. 24 at 15-20.) Respondent maintains the California Supreme Court's denial of this claim was not unreasonable because no misconduct occurred. (ECF No. 18 at 29-35.)

Applicable Legal Standards

In Darden v. Wainwright, 477 U.S. 168 (1986), the Supreme Court held that a prosecutor's improper comments violate the Constitution if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). See Parker v. Matthews, 567 U.S. at 45 (finding Darden to be the clearly established federal law relevant to prosecutor's improper comments). As "the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power,'" it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." Darden, 477 U.S. at 181 (citations omitted). In order to make a determination, the court is to consider the comment in the context of the entire trial. Hein v. Sullivan, 601 F.3d 897, 913 (9th Cir. 2010) (citing Darden, 477 U.S. at 182). And, because "the *Darden* standard is a very general one," courts have "more leeway...in reaching outcomes in case-by-case determinations." Parker, 567 U.S. at 48 (internal quotation marks omitted).

"The government's closing argument is that moment in the trial when a prosecutor is compelled to reveal her own understanding of the case as part of her effort to guide the jury's

27

comprehension." <u>Gautt v. Lewis</u>, 489 F.3d 993, 1013 (9th Cir. 2007). "Counsel are given latitude in the presentation of their closing arguments, and courts must allow the prosecution to strike hard blows based on the evidence presented and all reasonable inferences therefrom." <u>Ceja v. Stewart</u>, 97 F.3d 1246, 1253–54 (9th Cir. 1996) (internal quotation marks omitted).

Analysis

First, petitioner asserts that by making certain statements concerning the applicability of the MMPA defense to the evidence and facts in this case, the prosecutor misled the court during pretrial proceedings. He cites to page 217 and pages 275 through 276 of the reporter's transcript to support his assertion. (ECF No. 4 at 25-27.) A review of the record, however, does not support petitioner's claim.

Significantly, petitioner's complaints about the prosecutor's comments during pretrial proceedings – where there was no jury – do not and cannot amount to prosecutorial misconduct. Prosecutorial misconduct occurs where a prosecutor's improper comments "so infected *the trial* with unfairness as to make the resulting conviction a denial of due process." <u>Darden</u>, 477 U.S. at 181 (emphasis added). Comments and arguments made to the court during pretrial proceedings and in the absence of any jury, do not amount to a constitutional violation of the type contemplated in <u>Darden</u>. The purpose of a party's argument to the court is to persuade. Both the prosecutor and the defense attorney made their arguments to the judge presiding over the pretrial proceedings at issue, each giving their interpretation of the law as it applied to the facts and evidence presented or offered during that hearing. The prosecutor referenced the evidence known and/or facts proffered by defense counsel (because it is a defendant's burden to show entitlement to the MMPA defense) at each hearing and presented his argument concerning how that evidence or the proposed facts applied to the law as he interpreted it.

Moving on to petitioner's complaints regarding the prosecutor's closing arguments to the jury, and in particular petitioner's citations to page 767 and pages 782 through 783 of the reporter's transcript, the undersigned finds no misconduct and agrees with the California Supreme Court's determination.

////

In his closing statement to the jury, at page 767 of the reporter's transcript, the prosecutor argued that petitioner

> was running a commercial business enterprise. What he was selling was illegal. What he was selling was marijuana. There is nothing in the law that protects what Mr. Scott has done. He was growing marijuana; he was processing marijuana; he was distributing marijuana.
>
> Everything that Mr. Scott possessed at his residence on June 22nd of last year was possessed for purposes of sale. Now, Mr. Scott, sure, he could use some of it himself. He can eat some of his jerky. He can use some of his tincture. He can gargle with his honey if that is what he wants to do.
>
> But whether or not Mr. Scott happened to use some of these products himself is not why we're here; why we're here is because Mr. Scott was engaged in the commercial sales of marijuana products. He was selling his beef jerky; he was selling his tincture; and he was selling his honey. And the evidence of that is overwhelming.

(3 RT 767.) The prosecutor's remarks are proper argument to the jury based upon the evidence and his interpretation of the law and its application to that evidence. The prosecutor's comments on the law were proper, any comments on a witness' credibility were based upon the evidence and reasonable inferences therefrom, and any misstatements about the evidence were not so flagrant as to render the trial fundamentally unfair. See Donnelly v. DeChristoforo, 416 U.S. at 643; Boyde v. California, 494 U.S. 370, 384 (1990) (arguments of a trial lawyer "generally carry less weight with a jury than do instructions from the court").

Next, petitioner complains of certain comments at pages 782 and 783 of the prosecutor's rebuttal argument. The undersigned provides the following context:

> The judge … will read you a number of instructions, specifically, to the law itself, but also as to the charged offenses in this case. And obviously, some of those instructions will be about marijuana, and one of those is possession for sale. There is nothing in the instructions for possession for sale where a recommendation was any sort of defense of possession for sale.
>
> You will hear language in the charge for cultivating or planting marijuana. That it is possibly a defense, and that instruction reads in part:
>
> Possession of or cultivation of marijuana is lawful if authorized by

the Compassionate Use Act. The Compassionate Use Act allows a person to possess or cultivate marijuana for personal medical purposes when a physician has recommended or approved such use. The amount of marijuana possessed or cultivated must be reasonably related to the patient's current medical needs.

Now, based on that, Mr. Scott may arguably, at least in terms of you getting to hear about it, have a defense as to cultivation. But keep in mind it has to be related to his own personal needs, must be reasonably related to his ailments.

Mr. Clay testified that based upon the totality of the evidence, he saw the 38 pounds of jerky, each individually packaged; the gallons of tincture; the honey; the plant in the backyard. This was not possessed for personal use. This quantity was not reasonably related to Mr. Scott's medical needs.

So you will hear the Judge read to you that it is potentially a defense. But I argue to you, and I think it is clear based upon the trial testimony and evidence, that Mr. Scott simply did not have a defense based upon his recommendation issued by Dr. Hulter.

Again, Mr. Scott is charged with maintaining a place for the use or sale of a controlled substance. The fact that he has a recommendation is not a defense in any way to that charged crime.

Again, his recommendation is potentially a defense as to the concentrated cannabis. But again, it must be possession for his own personal medical use and it must be in an amount reasonably related to his personal medical needs. Based upon the evidence, that simply is not what we have.

As I said, we have a commercial enterprise with his own website, his own business card, his own credit card in the name of the business; seeking to hire additional employees, seeking to sell his product throughout the State of California; and evidence that he has, in fact, been selling his product throughout the State of California.

(3 RT 782-83.) The prosecutor did not commit misconduct. His statements concerning the law, including petitioner's available defenses (see these Findings, *ante*), were proper, as were his arguments concerning the evidence. Donnelly v. DeChristoforo, 416 U.S. at 643.

Further, the court instructed the jury "on the law that applies to the case" (3 RT 786), that the jury "must follow the law as [the court explains] it" and that if "the attorneys comments on the law conflict" with the court's instructions, they were required to follow the court's instructions (3 RT 787). The jury was further instructed that "[n]othing the attorneys say is evidence" (3 RT 789) and that they "alone must judge the credibility and believability of the

witnesses" (3 RT 792). Juries are presumed to have followed the court's instructions. <u>See</u>

<u>Drayden v White</u>, 232 F.3d 704, 713 (9th Cir. 2000) (presuming that the jury followed the

instruction that argument does not constitute evidence and that it should not be influenced by

sympathy or passion).

In sum, because petitioner was not entitled to a defense under the MMPA as explained

previously, the prosecutor's comments about the law, and the evidence as the law applied to it,

were not deceptive or misleading.

Based on the foregoing, the undersigned finds that the state court's denial of petitioner's

prosecutorial misconduct claim was not contrary to, or an unreasonable application of, clearly

established federal law, nor was it based on an unreasonable determination of fact. The decision

was not "so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility of fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S.

at 103. Accordingly, petitioner is not entitled to habeas relief on the prosecutorial misconduct

claim, and it should be denied.

C. *Sufficiency of the Evidence*

Petitioner argues the evidence is insufficient to support his conviction pursuant to

California Penal Code section 311.11 because there was "absolutely no proof" he had knowledge

of the unlawful images found on his computer or "any credible evidence" in support thereof.

(ECF No. 4 at 35-39; <u>see also</u> ECF No. 24 at 21-24.) Respondent maintains the California

Supreme Court's denial of the claim was not contrary to, nor did it involve an unreasonable

application of, Supreme Court precedent. (ECF No. 18 at 35-37.)

<u>Applicable Law</u>

As articulated by the Supreme Court in <u>Jackson</u>, the federal constitutional standard for

sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979); <u>see</u> <u>McDaniel v.</u>

<u>Brown</u>, 558 U.S. 120, 132-33 (2010) (reaffirming this standard). This court must therefore

determine whether the California court unreasonably applied <u>Jackson</u>. In making the

determination, this court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial. Jackson, 443 U.S. at 318-19. Rather, when "faced with a record of historical facts that supports conflicting inferences," this court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution." Id. at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law. See Engle v. Isaac, 456 U.S. 107, 128 (1982). Consequently, although the sufficiency of the evidence review by this court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law. Jackson, 443 U.S. at 324 n.16. A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005); see West v. American Tel. & Tel. Co, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law...."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Sanchez-Llamas v. Oregon, 548 U.S. 331, 345 (2006) (quoting Smith v. Philips, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Under Jackson, this court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction. Schlup v. Delo, 513 U.S. 298, 330 (1995). The United States Supreme Court has recently even further limited a federal court's scope of review under Jackson, holding that "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, 565 U.S. 1, 3 (2011) (per curiam). Jackson "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial." Cavazos, 565 U.S. at 3-4. Under Cavazos, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because

the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. at 4 (quoting Renico v. Lett, 559 U.S. 766, 773 (2010)).

If the record supports conflicting inferences, the reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." McDaniel v. Brown, 558 U.S. at 133 (quoting Jackson, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not reweigh conflicting evidence or reconsider witness credibility. Bruce v. Terhune, 376 F.3d 950, 957-58 (9th Cir. 2004). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution." Jackson, 443 U.S. at 319.

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the Anti-Terrorism and Effective Death Penalty Act, this court owes a "double dose of deference" to the decision of the state court. Long v. Johnson, 736 F.3d 891, 896 (9th Cir. 2013) (quoting Boyer v. Belleque, 659 F.3d 957, 960 (9th Cir. 2011)). See also Coleman v. Johnson, 566 U.S. 650, 651 (2012) ("Jackson claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference"); Kyzar v. Ryan, 780 F.3d 940, 943 (9th Cir. 2015) (same).

<u>Relevant Testimony</u>

Investigator Martin Perrone testified at trial. (2 RT 411-83.) He conducted forensic analyses on a Hewlett Packard (HP) computer tower (2 RT 413) and Dell computer tower (2 RT 425). On the HP, Perrone found 33 images of child pornography or suspected child pornography. (2 RT 418.) On cross-examination, Perrone acknowledge the images were found in the HP's unallocated space. (2 RT 434.) He described unallocated computer space (2 RT 432-33), concluding it involves "clusters" or "sectors" "ready to be written" or those to be "rewritten" because "[i]t hasn't been assigned to anything yet." (2 RT 433.) Perrone could not determine how the images found on the HP got there, just that they were present. (2 RT 434.) He also agreed on cross-examination that he could not determine who "put" the images there, or "who

33

viewed them or who ordered them." (2 RT 435.)  Neither could he determine when the images

got there.  (2 RT 439.)  (See also 2 RT 478-79 [responding to juror question re unallocated space

and inability to provide identifiers].)

Perrone further testified on cross-examination that his investigation revealed only one user

for both computers: "They have two different user names,[6] but [the] information is all of

[petitioner]'s.  (2 RT 440.)  And,

> So in the unallocated space, not only did I find the suspected child
> porn, I also found documents belonging to [petitioner], I found
> pictures belonging to [petitioner], I found Word documents
> belonging to [petitioner], Word Excel sheets belonging to
> [petitioner].
>
> Now, how do I know - - those are also in the unallocated space.
> How did they get there?  Well, common reasoning would be
> [petitioner] put them there, because they're in his documents.

(2 RT 440-41.)  There were "numerous" photographs of petitioner "and of marijuana and stuff."

(2 RT 450.)  There were also numerous videos of petitioner, including two wherein he was

processing marijuana.  (2 RT 450.)  Perrone found nothing on the HP to suggest someone other

than petitioner used the computer.  (2 RT 450-51.)

On redirect, Perrone testified that "accidentally get[ting] 33 porn pictures sent" "by

accident … doesn't happen."  (2 RT 448.)  That is so, Perrone testified, because people "pay for"

child pornography, "[t]hey trade pictures.  It is a commodity" (2 RT 449) rather than something

given away.  (See also 2 RT 466.)  Perrone had never heard of an individual having "child

pornography on their computer accidentally" but if it did happen, he could understand once or

twice, but not 33 times.  (2 RT 464.)  The 33 photographs were not "downloaded to the computer

one time" or in one "cluster."  (2 RT 472-73.)

Perrone further testified that items get into the unallocated space when someone deletes

something.  (2 RT 451-52.)  Whether that deletion occurs from images saved to the computer or

the result of deleting browser history following an Internet search for example.  (2 RT 452.)  But

those things were all "accessed" and "possessed in some way."  (2 RT 452-53.)

---

[6] On the HP, the only user ID was "Tommy Cat 1."  (2 RT 450, 456.)

1    <u>Analysis</u>

2    California Penal Code section 311.11(a) makes it a felony for a "person [to] knowingly

3    possess[ ] or control[ ] any matter ..., the production of which involves the use of a person under

4    18 years of age, knowing that the matter depicts a person under 18 years of age personally

5    engaging in or simulating sexual conduct." <u>In re Alva</u>, 33 Cal.4th 254, 262 (2004).

6    Whether a defendant knowingly possessed or exerted some control over the images in

7    question or whether those images appeared inadvertently presents a question of fact. <u>People v.</u>

8    <u>Petrovic</u>, 224 Cal.App.4th 1510, 1517 (2014). The California Supreme Court has held that when

9    it decides "issues of sufficiency of evidence, comparison with other cases is of limited utility,

10   since each case necessarily depends on its own facts. [Citation.]" <u>People v. Thomas</u>, 2 Cal.4th

11   489, 516 (1992).

12   Here, petitioner was the owner of the computer, found in his home, that contained 33

13   images of child pornography. His user name was only user name associated with that computer.

14   Further, the computer contained numerous other items belonging to petitioner, including other

15   documents and photographs found in the computer's unallocated space. Hence, it was not

16   unreasonable for the state court to conclude there was sufficient evidence to support petitioner's

17   conviction for knowing possession or control of child pornography pursuant to California Penal

18   Code section 311.11.

19   To petitioner's argument that his "computer lacked the software necessary to access the

20   'unallocated space' of the computer's hard drive," establishing he "lacked dominion and control

21   of the pornographic images" on the computer (ECF No. 4 at 37), a lack of software is not

22   determinative of the issue. A conviction for possession or control of child pornography does not

23   require any showing that a defendant had the ability to access, view, manipulate or modify the

24   images that were on his computer. <u>People v. Mahoney</u>, 220 Cal.App.4th 781, 795 (2013).

25   Petitioner's assertion that "said computer was in fact a used computer purchased … from

26   a third party" (ECF No. 4 at 37) is not a fact. The record does not include any evidence in this

27   regard, nor has petitioner provided any citation to the record to support his assertion.

28   ////

35

Petitioner places significance on the differences he perceives between the facts in People v. Tecklenburg, 169 Cal.App.4th 1402 (2009), and his case, arguing it does not apply and that this court should instead apply the holding in United States v. Flyer, 633 F.3d 911 (9th Cir. 2011). (ECF No. 4 at 38-39.)

The narrow question of law presented in Tecklenburg was whether the defendant could be convicted of knowingly possessing pornographic images of children contained in his computer's temporary Internet files (TIFs) without evidence he knew that the images had been stored there. Tecklenburg, 169 Cal.App.4th at 1414–15. Section 311.11(a) of the California Penal Code broadly prohibits the possession or control of child pornography. There, as one witness explained at trial, the existence of such images in the TIFs meant that, at some point, the images appeared on the computer screen. Id. at 1407. The state court noted that, although evidence that a defendant knew the images had been stored or had actively manipulated them could be used to prove knowing possession or control, such evidence was not essential. Id. at 1419 n.16. The court explained that "[t]he evidence established defendant actively searched for child pornography Web sites, opened such Web sites, went past the homepages, clicked through images on at least one site tour, displayed multiple images of child pornography from the Web sites on his computer screen, in some cases multiple times, and enlarged some of the images from thumbnail views." Id. at 1419.

Here, the prosecution was not required to present evidence that petitioner was aware that he possessed the "matter, representation of information, data, or image" containing the child pornography in order to prove a violation of section 311.11(a) of the California Penal Code. It presented evidence from which it could be reasonably inferred that petitioner had knowing possession or sole control over the computer upon which 33 images of child pornography were found. There were no other users identified on the computer – only petitioner's user name was associated with the HP tower, nor were there other materials belonging to other users found on the computer.

////

////

36

Further, Flyer does not apply here.  The defendant in Flyer was convicted in federal district court under Title 18 of the United States Code section 2252,[7] a federal statute.  Flyer, 633 F.3d at 913.  Petitioner was convicted in a California state court of a violation of the California Penal Code.  The federal and state statutes are not interchangeable.  And, as Tecklenburg recognized,

> The federal statute does not make it illegal to knowingly possess or control an image of child pornography; only to knowingly possess the material containing the image.  In the context of computer child pornography, it is understandable that the federal courts have focused, therefore, on the data stored in the computer's files as that which is illegal under the federal statute to possess.  Without knowledge of such files, there can be no "knowing" possession under the federal statute.

Tecklenburg, 169 Cal.App.4th at 1418-19.  "However, the language of section 311.11, subdivision (a), is not so limited.  Section 311.11, subdivision (a), makes it directly illegal to knowingly 'possess[] or control' any 'image' of child pornography."  Id. at 1419.

Finally, to the degree petitioner's claim can be interpreted to argue the evidence in support of his conviction is not credible, that is not the test.  This court is precluded from re-weighing the evidence or re-assessing witness credibility.  Schlup, 513 U.S at 330; Bruce v. Terhune, 376 F.3d at 957-58.  Petitioner's argument, in essence, insists on interpreting the evidence in the light most favorable to him.  And, again, that is not the test.  McDaniel, 558 U.S. at 133 (conflicts resolved in favor of the prosecution).

In sum, petitioner did not meet the heavy burden applied to a sufficiency of the evidence challenge.  Coleman, 566 U.S. at 651; Juan H., 408 F.3d at 1274.  Hence, the undersigned finds

---

[7] Specifically, 18 U.S.C. § 2254(a)(4)(B) provides that any person who "knowingly possesses, or knowingly accesses with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if-- (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct; -- shall be punished as provided in subsection (b) of this section."

the California Supreme Court's determination of the claim to be reasonable; it is not contrary to federal precedent nor is it based upon an unreasonable determination of the facts. 28 U.S.C. § 2254. Therefore, it is recommended that petitioner's claim be denied.

### D. *Claim Regarding the Admission of Exhibit 24*

Petitioner argues his constitutional rights were violated when the trial court permitted the jury to view and consider People's Exhibit 24 containing the 33 photographs found on the HP tower by Perrone. He further claims the jury should have been instructed not to consider the exhibit for it lacked foundation and was not admitted into evidence. (ECF Nos. 4 at 40-43 & 24 at 25-27.) Respondent contends the California Supreme Court reasonably denied his claim because the exhibit was in fact admitted into evidence, the investigator laid a proper foundation for the evidence, and the jury did not consider any improper or extraneous evidence. (ECF No. 18 at 37-39.)

### Relevant Background

The Clerk's Transcript on Appeal reveals that on Friday, May 18, 2012, during Investigator Perrone's testimony, he was shown "premarked Exhibit 24, Manila envelope with 10 pictures inside the manila envelope" and that Perrone thereafter described what was depicted on the 10 photographs comprising the exhibit. (CT 136.) On May 23, 2012, the clerk's minutes reveal the People requested "exhibits previously marked be entered into evidence." The Court placed on the record that they would be addressed "later on." (CT 142.) Later that same afternoon, the following appears in the clerk's minutes: "At 3:56 p.m., People requested pre-marked exhibits be entered into evidence. [¶] At 3:56 p.m., Defense counsel objects to the admissibility of item 24 with subdivision a-j regarding the child pornography. [¶] At 3:57 p.m., The Court admits it into evidence" and "The Court ruled on child pornography exhibit 24 with subdivisions a-j … At 4:00 p.m., People's exhibits were entered into evidence." (CT 144.)

The Reporter's Transcript on Appeal dated May 23, 2012, following the testimony of the defense's computer expert, reveals the following about the admission of People's Exhibit 24:

> MR. WAUGH: Sir, I don't know if the Court would like to address this now or tomorrow, but the items of evidence that we sought to have admitted.

38

1    THE COURT:  We could do that.

2    MR. WAUGH:  It is up to the Court; I have no preference.

3    MR. MILLER:  Nor do I, your Honor.  [¶]  The only thing I would
     like to put on the record, I would be objecting to the admissibility
4    of the - - let me see if I have the number here.  24-J – strike that.
     Item number 24 was sub - - it is 24-A through - - is it J?

5    
     MR. WAUGH:  Yes.
6    
     MR. MILLER:  24-A though J I would be objecting to admissibility
7    of those pieces of evidence inasmuch as their unreliability, and
     based upon the testimony of Mr. Stockham and the way that they
8    were downloaded from the computer.

9    THE COURT:  And those would be the photographs that were
     referenced of child pornography?
10   
     MR. MILLER:  Yes, your Honor.
11   
     THE COURT:  You want to be heard on that?
12   
     MR. WAUGH:  We believe they are admissible, and we'd ask that
13   the Court admit them into evidence.

14   THE COURT:  I am going to admit them into evidence.

15   (3 RT 661-62.)

16                    Analysis

17        Petitioner's argument rests on a mistaken reading of the record in this case.  The trial court

18   did in fact admit People's Exhibit 24 and did so over defense counsel's objection that the exhibit

19   was inadmissible because it was unreliable.  (3 RT 661-62; CT 144.)  Moreover, petitioner's

20   citation to page 663, lines 17 and 18, wherein the reporter's transcript reads "(People's Exhibits 1

21   through 23, 25 through 30, and 32 through 36 received at this time)" does not support his

22   assertion otherwise because a careful reading of the record reveals at lines 9 and 10 of that same

23   page, the trial court was making clear it had already "ruled on the photographs of child

24   pornography, which were [number] 24," making clear the subsequent notation was merely

25   addressing the remainder of the exhibits the People sought to admit.

26        Neither does petitioner's citation to page 486 of the Reporter's Transcript support his

27   assertion.  That page is merely the reporter's index, a document created by the reporter for ease of

28   reference.  It is not the official record in that sense and the fact it excludes reference to Exhibit 24

                                    39

is not determinative of the issue. The words spoken in open court plainly reveal People's Exhibit 24 was admitted into evidence over defense objection.

Finally, the undersigned notes the words spoken by the trial judge, as reflected in the reporter's transcript, on May 23, 2012, and the minutes found in the clerk's transcript for that same date are in accord with one another. Said another way, the transcripts are not in conflict. Cf. People v. Smith (1983) 33 Cal.3d 596, 599 (1983) (the state high court rejected a mechanical approach to *conflicts* between the reporter's and clerk's transcripts. Where the record cannot be harmonized, "'that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. Therefore, whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case'").

Because People's Exhibit 24 was admitted into evidence, petitioner's argument that the jury should have been instructed, sua sponte, not to consider the exhibit is faulty. The trial court had no such duty.

To the degree petitioner complains Investigator Perrone's findings were not corroborated or credible, and by extension the exhibit in question was not admissible, his claim is not cognizable. Federal habeas courts may not "reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. at 68. In Estelle, the Supreme Court held the Ninth Circuit erred in concluding the evidence was incorrectly admitted under state law since, "it is not the province of a federal habeas court to reexamine state court determinations on state law questions." Id. at 67-68. The Court re-emphasized that "federal habeas corpus relief does not lie for error in state law." Id. at 67, citing Lewis v. Jeffers, 497 U.S. 764 (1990), and Pulley v. Harris, 465 U.S. 37, 41 (1984) (federal courts may not grant habeas relief where the sole ground presented involves a perceived error of state law, unless said error is so egregious as to amount to a violation of the due process or equal protection clauses of the Fourteenth Amendment). In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Estelle, at 67-68. The court's habeas powers do not allow for the vacatur of a conviction "based on a belief that the trial judge incorrectly

interpreted the California Evidence Code in ruling" on the admissibility of evidence. Id. at 72.
Here, while petitioner alleges a violation of due process, as noted above, his argument is premised
on an inaccurate or mistaken reading of the record, leaving only an unsupported perceived error
of state law that does not amount to an error so egregious it violated his federal constitutional
rights.

Evidence rules violate this right if they "infring[e] upon a weighty interest of the accused
and are arbitrary or disproportionate to the purposes they are designed to serve." Holmes v.
South Carolina, 547 U.S. 319, 324 (2006) (citation and internal quotations omitted). The
Supreme Court has made very few rulings regarding the admission of evidence as a violation of
due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Although the Court
has been clear that a writ should be issued when constitutional errors have rendered the trial
fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly
prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."
Id. (citing Williams v. Taylor, 529 U.S. at 375). Absent such "clearly established Federal law," it
cannot be concluded that the court's ruling was an "unreasonable application." Carey v.
Musladin, 549 U.S. at 77 (noting that, where the Supreme Court has not adequately addressed a
claim, a federal court cannot find a state court ruling unreasonable).

For the foregoing reasons, petitioner is not entitled to relief on this claim. The California
Supreme Court's determination was reasonable. Therefore, the undersigned recommends the
claim be denied.

E. Trial Counsel's Failure to Challenge the Search Warrant

Petitioner argues trial counsel provided ineffective assistance by failing to challenge the
legality of the search warrant because the affiant officer failed to include petitioner's status as a
qualified patient in the affidavit of probable cause, and had he done so, there would have been no
basis to issue the search warrant in the first instance. Hence, by failing to file a motion to
suppress on that basis, trial counsel was deficient, and that deficiency resulted in prejudice
requiring habeas relief. (ECF Nos. 4 at 44-50 & 24 at 29-32.) Respondent counters that the state
court's determination there was no ineffective assistance of trial counsel was not unreasonable

41

1 and, therefore, petitioner is not entitled to relief.  (ECF No. 18 at 39-42.)

2 Applicable Law

3 To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his

4 trial counsel's performance "fell below an objective standard of reasonableness" and that "there is

5 a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

6 would have been different."  Strickland v. Washington, 466 U.S. 668, 687–88, 694 (1984).

7 Under the first prong of the Strickland test, a petitioner must show that counsel's conduct

8 failed to meet an objective standard of reasonableness.  Strickland, 466 U.S. at 687.  There is "a

9 'strong presumption' that counsel's representation was within the 'wide range' of reasonable

10 professional assistance."  Harrington v. Richter, 562 U.S. at 104 (quoting Strickland, 466 U.S. at

11 689).  Petitioner must rebut this presumption by demonstrating that his counsel's performance

12 was unreasonable under prevailing professional norms and was not the product of "sound trial

13 strategy."  Strickland, 466 U.S. at 688–89.  Judicial scrutiny of defense counsel's performance is

14 "highly deferential," and thus the court must evaluate counsel's conduct from her perspective at

15 the time it occurred, without the benefit of hindsight.  Id. at 689.

16 The second prong of the Strickland test requires a petitioner to show that counsel's

17 conduct prejudiced him.  Strickland, 466 U.S. at 691–92.  Prejudice is found where "there is a

18 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

19 would have been different."  Id. at 694.  A reasonable probability is one "'sufficient to undermine

20 confidence in the outcome.'"  Summerlin, 427 F.3d at 640 (quoting Strickland, 466 U.S. at 693).

21 "This does not require a showing that counsel's actions 'more likely than not altered the

22 outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-

23 not standard is slight and matters 'only in the rarest case.'"  Richter, 562 U.S. at 112 (quoting

24 Strickland, 466 U.S. at 693).  "The likelihood of a different result must be substantial, not just

25 conceivable."  Id.

26 Analysis

27 Respondent is correct that the affidavit in support of the search warrant itself is not a part

28 of the record on appeal.  And, respondent is also correct in asserting a reasonable inference can be

42

made from the People's Informal Response to Petitioner's Request for Writ of Habeas Corpus filed with the Tehama County Superior Court that Investigator Clay did in fact include petitioner's status as a qualified patient in his affidavit.  The passage in question reads as follows:

> [Petitioner's] principal complaint appears to be that Investigator Clay failed to mention his status as a medicinal marijuana recommendation holder.  A reading of the warrant makes clear that Investigator Clay implicitly acknowledges Petitioner's status as of the fall of 2007.  "At that time, your affiant observed marijuana plants growing in a fenced area behind his residence.  [Petitioner] refused to allow agents to look inside his residence. At that time there was insufficient evidence to prove [petitioner] was outside the intent of the medical marijuana laws in California and in violation of the law."  (Search warrant Statement of Probable Cause, p. 6, lines 9-12.)

> Investigator Clay, through his determination that there was insufficient evidence to prove that Petitioner was outside the medical marijuana laws, makes clear that Petitioner, at that time, possessed a medical marijuana recommendation.  Otherwise, he would have obviously been afforded no protections by the law in his cultivation of marijuana.

> The search warrant is further clear that Investigator Clay had evidence that Petitioner was engaged in the ongoing manufacture and sale of marijuana based products.  The warrant was clear and well-written.  It was reviewed and issued by a neutral, detached magistrate.  Petitioner's trial counsel would have been unsuccessful in attacking the warrant.  Petitioner is unable to show actual prejudice.

(LD No. 9 at 9-10; see also ECF No. 4 at 132-33.)

The state superior court's finding that counsel was not deficient by "fail[ing] to act in a manner to be expected of a reasonably competent attorney[] acting as a diligent advocate[]" (LD No. 11 at 3) is reasonable, as is that of the California Supreme Court.

First, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690; see also Cullen v. Pinholster, 563 U.S. 170, 196 (2011).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Richter, 562 U.S. at 105.  When the particular claim is the failure to file a motion, there are additional requirements for the showing of prejudice: a habeas petitioner

must show that the claims that should have been raised in the motion were meritorious and that there is a reasonable probability that the results of the proceeding would have been different if the motion were granted. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Notably, the failure to take a futile action or make a meritless argument can never constitute deficient performance. See Rupe v. Wood, 93 F.3d 1434, 1444–45 (9th Cir. 1996); see also Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel); Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) ("Failure to raise a meritless argument does not constitute ineffective assistance").

Here, it would have been futile for trial counsel to challenge the search warrant on the basis that Investigator Clay failed to advise the reviewing magistrate that petitioner was a qualified patient because the affidavit implicitly states as much. Moreover, the balance of petitioner's argument requires the court to adopt his erroneous interpretation of the law pertaining to marijuana used for medical purposes. And because the motion to suppress would not have been successful, petitioner has failed to show prejudice.

Notably too, any argument or inference by petitioner that the photographs appeared or were acquired after law enforcement took possession of his computer is belied by a reading of the record in proper context. (See, e.g., 2 RT 434-35, 439, 471, 478.)

The California Supreme Court's rejection of the ineffective assistance of counsel claim was not contrary to nor an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). Nor was it based upon an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). It is recommended that Petitioner's claim of ineffective assistance of counsel for a failure to file a suppression motion be denied.

F. *Trial Counsel's Failure to Present a Mistake of Fact Defense*

Next, petitioner complains trial counsel was ineffective for failing to present a mistake of fact defense and request the related jury instruction. (ECF Nos. 4 at 51-56 & 24 at 33-36.) Respondent maintains there was no ineffective assistance of counsel and that the California Supreme Court's denial of the claim was not unreasonable. (ECF No. 18 at 42-46.)

////

44

Petitioner presented this claim in his habeas petition to the Tehama County Superior Court; it denied the claim. Likewise, the California Supreme Court denied relief.

<u>Analysis</u>

Petitioner contends the record supports his assertion that trial counsel was ineffective for failing to present a mistake of fact defense where evidence established he believed he could legally sell marijuana products to dispensaries or collectives by virtue of his status as a qualified patient pursuant to the CUA and MMPA. He is mistaken.

A defendant is not guilty of a crime if he or she did not have the intent or mental state to commit it due to a mistaken factual belief. Cal. Pen. Code, § 26(3). For general intent crimes, the defendant's belief must be reasonable; for specific intent crimes, it does not. CALCRIM No. 3406, Bench Notes ["If the mental state element at issue is either specific criminal intent or knowledge, do not use the bracketed language requiring the belief to be reasonable."], citing <u>People v. Reyes</u>, 52 Cal.App.4th 975, 984 & n. 6 (1997); <u>People v. Russell</u>, 144 Cal.App.4th 1415, 1425-26 (2006), <u>superseded on other grounds</u> in <u>People v. Lawson</u>, 215 Cal.App.4th 108, 118 (2013).

'"A mistake of fact" is where a person understands the facts to be other than they are; whereas a "mistake of law" is where a person knows the facts as they really are, but has a mistaken belief as to the legal consequences of those facts.' [Citation.]" <u>People v. LaMarr</u>, 20 Cal.2d 705, 710 (1942). "Generally, mistake of law is not a defense to a crime." <u>People v. Cole</u>, 156 Cal.App.4th 452, 483 (2007); <u>see</u> <u>People v. Meneses</u>, 165 Cal.App.4th 1648, 1662-63 (2008) ("A mistake of law, in its strict sense, means ignorance that the penal law (of which one stands accused) prohibits one's conduct – and ignorance on this point 'is almost never a defense'").

Initially, the undersigned notes that to the degree petitioner relies upon evidence at the preliminary hearing to support his claim, he may not do so. Testimony given at the preliminary hearing is not known to the jury at trial where none of that testimony was admitted at trial for the jury's consideration. The testimony offered at trial, and considered by the jury, included testimony of law enforcement officers who located invoices and other documentation supporting a finding or an inference that petitioner was selling marijuana to others for a profit. (<u>See, e.g.</u>, 2

45

RT 346-47, 368-69, 510-11, 523-24, 532-33, 547-48, 552-53; 3 RT 737, 739-44.)  Evidence

admitted at trial also indicated petitioner had sold jerky to an individual located in Texas.  (2 RT

510.)  While the jury did hear evidence that some of those invoices reflected sales to Emerald

City Health, Compassionate Patients Association, San Bernardino Patients Association and San

Joaquin Club – clubs or collectives (3 RT 746-48) - the jury remained free to conclude

petitioner's actions were illegal and involved sales for profit of marijuana related products.

Significantly here, any mistake petitioner may have made as to whether he was

"permitted" to sell the marijuana to others via his Budd Buzzard website would have been a

mistake of *law*, on which the jury was properly instructed.  See People v. Urziceanu, 132

Cal.App.4[th] at 776 (erroneous belief a sale was lawful under CUA was mistake of law, not fact).

Because petitioner was mistaken as to the law, versus the facts, trial counsel was not

ineffective for failing to request a mistake of fact instruction.  Even if the undersigned were to

assume deficiency on the part of trial counsel, petitioner cannot establish prejudice.  Here, the

jury found petitioner possessed the marijuana with the specific intent to sell it.  (CT 154.)  The

jury rejected his CUA defense as this court and others.  (CT 151-57.)  Hence, even had the jury

been instructed with a mistake of fact defense, it is not reasonably probable a more favorable

result would have occurred.  Strickland, 466 U.S. at 690, 694.

In conclusion, the California Supreme Court's denial of petitioner's claim was not an

unreasonable application of Supreme Court precedent.  28 U.S.C. § 2254.  Accordingly, the

undersigned recommends the claim be denied.

G. *Trial Counsel's Failure to Challenge the Legality of the Computer Search*

Next, petitioner avers trial counsel was ineffective for failing to challenge the legality of

the search of his HP computer.  He contends counsel failed to research law in this area and had he

filed a motion to suppress evidence on this basis it would have resulted in a more favorable

outcome.  (ECF Nos. 4 at 57-50 & 24 at 37-40.)  Respondent contends the California Supreme

Court did not unreasonably deny petitioner's claim.  (ECF No. 18 at 46-47.)

Petitioner presented his claim to the Tehama County Superior Court and the California

Supreme Court in habeas petitions.

To reiterate, to prevail on claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, falling below an "objective standard of reasonableness" under prevailing professional norms, and he must demonstrate that the deficiency prejudiced the defense. <u>Strickland</u>, 466 U.S. at 687-88. And more particularly, under <u>Strickland</u>, to demonstrate prejudice stemming from a failure to file a motion a petitioner must show that: (1) had his counsel filed the motion, it is reasonable that the trial court would have granted it as meritorious, and (2) had the motion been granted, it is reasonable that there would have been an outcome more favorable to him. <u>Kimmelman v. Morrison</u>, 477 U.S. at 373-75.

Petitioner argues that because Clay "was relying upon information he found on Petitioner's marijuana-related business website … he could have only been seeking a search warrant to look for evidence of illicit marijuana-related activity. Therefore, mention of child pornography could not have been included in the affidavit in support of the search warrant." (ECF No. 24 at 38.) Thus, petitioner complains, Investigator Perrone's subsequent examination of his "computer exceeded the scope of the warrant" in violation of his constitutional rights. (<u>Id.</u> at 38.) From the aforementioned, petitioner contends that trial counsel failed "to investigate the applicable judicial authorities" that should have resulted in a successful challenge to the legality of the search warrant. (<u>Id.</u> at 38-40.) Despite his assertions, Petitioner is not entitled to relief because his claim is rife with speculation and lacks any record support.

The affidavit in support of the search warrant is not a part of the record. Therefore, it is impossible for the undersigned to review the document and its contents. Nor is there any other reference or inference from the record to be considered. Petitioner's conclusory claim, which establishes neither deficient performance nor prejudice, does not warrant habeas relief. <u>See</u> <u>Bragg v. Galaza</u>, 242 F.3d 1082, 1088 (9th Cir. 2001) (mere speculation that evidence might be helpful insufficient to establish ineffective assistance); <u>Jones v. Gomez</u>, 66 F.3d 199, 204-05 (9th Cir. 1995) (conclusory allegations not supported by statement of specific facts do not warrant habeas relief); <u>James v. Borg</u>, 24 F.3d 20, 26 (9th Cir. 1994) (same); <u>United States v. Schaflander</u>, 743 F.2d 714, 721 (9th Cir. 1984) (a petitioner cannot meet his burden by presenting "mere conclusory statements;" he must tender affidavits or other evidence in support); <u>cf.</u> <u>Dows v.</u>

Wood, 211 F.3d 480, 486-87 (9th Cir. 2000) (rejecting claim of ineffective assistance of counsel based on counsel's failure to call witness because no evidence that witness actually existed, other than petitioner's own self-serving affidavit, and no evidence that witness would have provided helpful testimony for the defense, i.e., petitioner did not present affidavit from alleged witness).

Even assuming the search warrant sought evidence related to illegal marijuana sales, including evidence contained on petitioner's computer, where Perrone discovered child pornography after having located photographs depicting petitioner with marijuana and videos of petitioner processing marijuana, Perrone's inadvertent discovery of the child pornography does not require suppression of that evidence. Because the police were lawfully searching for evidence of crimes pertaining to marijuana in petitioner's files, that they had legitimately accessed and where the incriminating child pornography was located, the evidence was properly admitted. See, e.g., Horton v. California, 496 U.S. 128, 136-37 (1990); see also United States v. Wong, 334 F.3d 831, 836–37 (9th Cir. 2003) (where review of computer files lawfully seized pursuant to search warrant issued in murder investigation resulted in discovery of child pornography, the evidence was in plain view). Lastly, the doctrine of inevitable discovery can render the evidence of petitioner's possession and production of child pornography admissible. In Nix v. Williams, 467 U.S. 431, 443-44 (1984), the Supreme Court held that unlawfully obtained evidence that would inevitably be unearthed in the course of a legally conducted investigation is admissible.

Review of counsel's performance is highly deferential and there is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. Williams v. Woodford, 384 F.3d 567, 61 (9th Cir. 2004); see also Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (a habeas court's review of a claim under the Strickland standard is "doubly deferential"). Here, petitioner fails to overcome, and the record does not otherwise rebut, the presumption that trial counsel performed competently in deciding what investigation was necessary in order to best defend against the prosecution's case. Strickland, 466 U.S. at 689, 691.

Further, the cases upon which petitioner relies are distinguishable. In United States v. Carey, 172 F.3d 1268, 1271 (10th Cir. 1999), a detective obtained a warrant that authorized him to search the defendant's computer for "names, telephone numbers, ledger receipts, addresses,

and other documentary evidence pertaining to the sale and distribution of controlled substances."
While searching the computer, the detective found what he described as a "JPG file" that
contained child pornography.  Id.  The detective then downloaded approximately two hundred
forty-four JPG files onto nineteen floppy disks.  Id.  The detective looked at "about five to seven"
files on each disk—a process that took approximately five hours—before continuing his search
for evidence of drug transactions.  Id.

At the suppression hearing, the detective testified that, "although the discovery of the [first
child pornography image] was completely inadvertent, when he saw [that image], he developed
probable cause to believe the same kind of material was present on the other image files."  Carey,
172 F.3d at 1271.  The detective later backtracked, stating that he "wasn't conducting a search for
child pornography" when he continued to open the image files, but that it was simply "what those
[files] turned out to be."  Id. (internal quotation marks omitted).  Based on the detective's
testimony, the Tenth Circuit, found that the child pornography was not "inadvertently
discovered," because the detective temporarily abandoned his warrant-authorized search to look
for child pornography.  Id. at 1273.  The Tenth Circuit explained that,

> the case turns upon the fact that each of the files containing
> pornographic material was labeled "JPG" and most featured a
> sexually suggestive title. Certainly after opening the first file and
> seeing an image of child pornography, the searching officer was
> aware—in advance of opening the remaining files—what the label
> meant. When he opened the subsequent files, he knew he was not
> going to find items related to drug activity as specified in the
> warrant.

172 F.3d at 1274.  The Tenth Circuit concluded, accordingly, that the detective "exceeded the
scope of the warrant in this case."  Id. at 1276.

The Tenth Circuit was careful to state, however, that the result in the case was "predicated
only upon the particular facts of this case, and a search of computer files based on different facts
might produce a different result."  Carey, 172 F.3d at 1276 (footnote omitted).  Moreover, in a
concurring opinion, it was stated that, "if the record showed that [the detective] had merely
continued his search for drug-related evidence and, in doing so, continued to come across

49

evidence of child pornography, ... a different result would be required." Id. at 1277 (Baldock, J., concurring). That different result is called for here. Perrone did not abandon his search for marijuana related evidence in favor of a search for child pornography.

Similarly, defendant's reliance upon In re Matter of the United States of America's Application for a Search Warrant to Seize and Search Electronic Devices from Edward Cunnius, 770 F.Supp.2d 1138 (W.D. Wash. 2011), is misplaced. There, a magistrate judge rejected an application for a search warrant because the government "refuse[d] to conduct its search of the digital devices utilizing a filter team and foreswearing reliance on the plain view doctrine." Id. at 1139. But in the United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162 (9th Cir. 2010) (en banc), the Ninth Circuit issued an amended opinion of its earlier ruling (579 F.3d 989, 1006 (9th Cir. 2009)), holding that search protocol was no longer part of the majority opinion nor was it binding circuit precedent. Rather, the protocols were not constitutional requirements, but "guidance," which, when followed, "offers the government a safe harbor." Id. at 1178. The undersigned finds the Washington district court's decision in Edward Cunnius' case is non-binding authority.

In sum, the California Supreme Court could have reasonably concluded that trial counsel was not ineffective for failing to challenge the legality of the search warrant and failing to move to suppress evidence of petitioner's possession of child pornography. Richter, 562 U.S. at 106-07. As a result, petitioner is not entitled to relief and the claim should be denied.

H. *Ineffective Assistance of Appellate Counsel*

In his eighth claim for relief, petitioner asserts that appellate counsel rendered ineffective assistance of counsel by failing to raise the claims asserted herein as grounds one through seven and to file a petition for review in the California Supreme Court. (ECF Nos. 4 at 62-69 & 24 at 41-46.) Respondent contends the California Supreme Court's denial was not unreasonable as appellate counsel did not render ineffective assistance. (ECF No. 18 at 47-49.)

A habeas claim alleging appellate counsel was ineffective is evaluated under Strickland. See Williams v. Taylor, 529 U.S. at 390–91. To establish ineffective assistance of counsel, petitioner must prove: (1) counsel's representation fell below an objective standard of

reasonableness under prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 687–94, 697. As the high court has observed, appellate counsel performs properly and competently when he or she exercises discretion and presents only the strongest claims instead of every conceivable claim. <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983); <u>Smith v. Murray</u>, 477 U.S. 527, 536 (1986). As the Supreme Court has held, "[n]either *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." <u>Jones v. Barnes</u>, 463 U.S. at 751; <u>see also</u> <u>Evitts v. Lucey</u>, 469 U.S. 387, 394 (1985) ("the attorney need not advance every argument, regardless of merit, urged by the appellant"). "In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." <u>Miller v. Keeney</u>, 882 F.2d 1428, 1434 (9th Cir. 1989). The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir. 1998). Even if petitioner could demonstrate his appellate attorney acted unreasonably, he must still show prejudice. <u>Smith v. Robbins</u>, 528 U.S. 259, 285–286 (2000). Habeas relief for ineffective assistance of counsel may only be granted if the state-court decision unreasonably applied the <u>Strickland</u> standard. <u>Knowles v. Mirzayance</u>, 556 U.S. at 122.

Petitioner argues "appellate counsel failed to raise meritorious issues on direct appeal that have the potential for success, and there is no strategic or tactical reason not to have raised them." (ECF No. 4 at 67.) The undersigned disagrees.

As explained above, the undersigned has recommended the denial of petitioner's claims one through seven, finding the California Supreme Court's denial of those claims was not unreasonable or contrary to Supreme Court precedent, nor did any involve an unreasonable determination of facts. Said another way, the claims are without merit.

////

51

Further, petitioner has provided this court with copies of appellate counsel's correspondence to petitioner. In that correspondence, appellate counsel explains the reasons for electing not to raise the issues petitioner sought to present on appeal. (ECF No. 4, Exs. I & J.) A review of the exhibits reveals counsel's choices were reasonable and based upon an examination of the record and proper application of the law to petitioner's case. Jones v. Barnes, 463 U.S. at 752; Smith v. Murray, 477 U.S. at 536; Miller v. Keeney, 882 F.2d 1428 at 1434; Babbitt v. Calderon, 151 F.3d at 1173. Therefore, petitioner cannot establish ineffective assistance of appellate counsel.

Petitioner has failed to demonstrate prejudice with respect to this claim. For the reasons explained above, petitioner's grounds one through seven are meritless. Appellate counsel's decision to press only issues on appeal that he believed, in his professional judgment, had more merit than those suggested by petitioner was "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970).

There is no evidence in the record that counsel's investigation of the issues was incomplete, that a more thorough investigation would have revealed a meritorious issue on appeal, or that appellate counsel's decision not to raise these issues fell below an objective standard of reasonableness. As a result, the California Supreme Court's denial of petitioner's claim that appellate counsel was ineffective is not contrary to or an unreasonable application of clearly established federal precedent, and it precludes habeas relief. 28 U.S.C. § 2254. Accordingly, the undersigned recommends the claim be denied.

I. *Cumulative Error*

Next, petitioner maintains the state court denials of his claims asserted in grounds one through eight of the habeas petition, amount to cumulative error, entitling him to relief. (ECF Nos. 4 at 72 & 24 at 47-48.) Respondent contends the Supreme Court has not recognized such a claim affords federal habeas relief, and that while the Ninth Circuit Court of Appeals does so, petitioner has failed to meet his burden in that regard. (ECF No. 18 at 49-50.)

The Ninth Circuit has stated "[t]he Supreme Court has clearly established that the combined effect of multiple trial court errors violates due process where it renders the resulting

52

trial fundamentally unfair." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298 (1973)); see also Whelchel v. Washington, 232 F.3d 1197, 1212 (9th Cir. 2000). "Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors has still prejudiced a defendant." Jackson v. Brown, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting Whelchel v. Washington, 232 F.3d at 1212). Where "there are a number of errors at trial, 'a balkanized, issue-by-issue harmless error review' is far less effective than analyzing the overall effect of all the errors in the context of the evidence introduced at trial against the defendant." United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996) (quoting United States v. Wallace, 848 F.2d 1464, 1476 (9th Cir. 1988)).

"While the combined effect of multiple errors may violate due process even when no single error amounts to a constitutional violation or requires reversal, habeas relief is warranted only where the errors infect a trial with unfairness." Payton v. Cullen, 658 F.3d 890, 896-97 (9th Cir. 2011) (citing Chambers, 401 U.S. at 298, 302-03). Such "infection" occurs where the combined effect of the errors had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993) (citation omitted). In other words, where the combined effect of individually harmless errors renders a criminal defense "far less persuasive than it might [otherwise] have been," the resulting conviction violates due process. See Chambers, 401 U.S. at 294.

Here, the court has addressed each of the errors raised by petitioner in grounds one through eight of his petition for writ of habeas corpus and found no error. Therefore, because the undersigned has "conclude[d] that no error of constitutional magnitude occurred, no cumulative prejudice is possible." Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011). Accordingly, the undersigned recommends denying petitioner's claim of cumulative error.

    J.    *Denial of Due Process*

In his tenth ground for relief, petitioner complains he was denied due process when the state superior court denied his state habeas petition without issuing the writ or an order to show cause because he stated a prima facie case as to each claim pursuant to California Penal Code

section 1474. (ECF Nos. 4 at 73-75 & 24 at 49-50.) Respondent argues the California Supreme Court did not unreasonably deny his claim because it arises under state law, thus precluding federal habeas relief. (ECF No. 18 at 50-51.)

Respondent is correct. This claim is based on violations of state law and state court rules which are not remediable on federal habeas review, even if state law was erroneously interpreted or applied. See Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("a 'mere error of state law' is not a denial of due process"); Estelle v. McGuire, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") A federal habeas petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process. We accept a state court's interpretation of state law, and alleged errors in the application of state law are not cognizable in federal habeas corpus." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted); see also Watts v. Bonneville, 879 F.2d 685, 687 (9th Cir. 1989) (holding that a claim that the trial court misapplied section 654 of the California Penal Code at sentencing was not cognizable in a federal habeas petition); Windham v. Merkle, 163 F.3d 1092, 1103 (9th Cir. 1998) (a federal habeas court has no authority to review alleged violations of a state's evidentiary rules). Additionally, the Court must "accept a state court ruling on questions of state law." Melugin v. Hames, 38 F.3d 1478, 1487 (9th Cir. 1994) (citing Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990)).

Accordingly, the decision of the California Supreme Court was neither contrary to, nor an objectively unreasonable application of, clearly established Supreme Court authority and habeas relief is not warranted. Thus, the undersigned recommends this claim be denied.

### K. *Motion for New Trial*

Lastly, petitioner contends the trial court erred in failing to allow his motion for new trial to be heard, thereby violating his federal constitutional rights, resulting in a miscarriage of justice entitling him to relief. (ECF Nos. 4 at 76-82 & 24 at 51-53.) Respondent maintains the California Supreme Court did not unreasonably deny petitioner's claim. (ECF No. 18 at 51-52.)

Petitioner's claim was presented to the California Supreme Court in a petition for review; the petition was denied on the merits. (LD Nos. 6 & 7.) Additionally, this claim was presented

on direct review to the Third District Court of Appeal. That court found no error, reasoning as follows:

> Defendant contends the trial court erred in failing to consider his motion for a new trial, and thus, the matter must be remanded for a hearing on the motion. We disagree.
>
> At his sentencing hearing, defendant, against the advice of his counsel, informed the trial court that he had prepared a motion for new trial, his mother had submitted it to the clerk of the court, and the clerk refused to file it because defendant was represented by counsel. [Fn. Omitted.] The trial court sentenced defendant without considering his motion. Defendant's motion does not appear in the record.
>
> As indicated above, defendant was represented by counsel when his mother sought to submit the motion for new trial. Consequently, "the court had the authority to refuse to file or consider pro se motions and other documents presented by [defendant] that related to the conduct of the case," including any motion for a new trial. (*People v. Harrison* (200 l) 92 Cal.App.4th 780, 789; see *People v. Merkouris* (1956) 46 Cal.2d 540, 554-555; see also *People v. Clark* (1992) 3 Cal.4th 41, 173; *People v. Mattson* (1959) 51 Cal.2d 777, 797-798.)

(LD 5 at 7; see also ECF No. 18-1 at 8.)

In this case, on the date of sentencing, petitioner was represented by counsel. On two occasions, just prior to the court's consideration of petitioner's Romero motion and prior to its tentative sentencing decision, petitioner himself sought to address the court. (3 RT 830:15-16 & 831:28-832:1.) He was advised he could speak in "due course." (3 RT 832.) Following the court's recitation of its tentative decision, the following colloquy occurred:

> [MR. MILLER]: Your Honor, Mr. Scott wishes to address the Court. I have counselled him against that, but it is his prerogative and he wishes to address prior to sentence being pronounced.
>
> THE COURT: Do you want to address the Court, Mr. Scott?
>
> THE DEFENDANT: Yes, sir. [¶] I have a motion or I have a motion for new trial prepared under - - pursuant to Penal Code section - -
>
> MR. MILLER: Stop. Stop.
>
> THE DEFENDANT: Pursuant to Penal Code section 1181 of the Penal Code. And my mom tried to submit it to the clerk of the court here, but they refused to accept it because I have an attorney. But my attorney feels - -

55

THE COURT: Do you have anything to say with regard to sentencing, sir?

THE DEFENDANT: Yes. It says it all in the motion. It is under the motion under California law. With the guidelines that [I] was going by, I should have never even been prosecuted. And, it is all in that motion. It is all in law. I do have a copy of the Senate Bill 420 with me which is the Medical Marijuana Program Act. I have the Department of Justice state guidelines for the security and non-diversion of marijuana drawn for medical use with me and everything it says in there along with also case law showing I am supposed to be exempt from these charges. It is all in the motion. I would like to submit it to the Court so it would be public record.

THE COURT: All right. Thank you.

(3 RT 833-34.) Immediately thereafter, the trial court imposed its sentence. (3 RT 834-37.)

The trial court's actions can be understood by an examination of the authority cited by the Third District Court of Appeal. In People v. Harrison, 92 Cal.App.4th 780, 788-89 (2001), the appellate court explained:

> To the contrary, "a party who is represented by counsel has no right to be heard personally [citation]...." (*In re Cathey* (1961) 55 Cal.2d 679, 684 [12 Cal.Rptr. 762, 361 P.2d 426]; see also *People v. Merkouris* (1956) 46 Cal.2d 540, 554-555 [297 P.2d 999].) A trial court may, in its discretion and upon a showing of good cause, permit a party who is represented by counsel to participate in conducting the case, but it should not do so unless it determines "that in the circumstances of the case the cause of justice will thereby be served and that the orderly and expeditious conduct of the court's business will not thereby be substantially hindered, hampered or delayed." (*People v. Mattson* (1959) 51 Cal.2d 777, 797 [336 P.2d 937].) Where the party is not permitted personally to participate in conducting the case, pro se filings by that party may be returned unfiled (*People v. Clark* (1992) 3 Cal.4th 41, 173 [10 Cal.Rptr.2d 554, 833 P.2d 561]) or, if filed, may be stricken (*People v. Mattson, supra*, 51 Cal.2d at p. 798).
>
> There is, however, one exception to the rule that motions of parties represented by counsel must be filed by such counsel: courts must "accept and consider pro se motions regarding representation, including requests for new counsel. (Cf. *People v. Marsden, supra*, 2 Cal.3d 118.) Such motions must be clearly labeled as such, and must be limited to matters concerning representation. [Courts] will not consider extraneous matters even in such documents unless submitted by counsel." (*People v. Clark, supra*, 3 Cal.4th at p. 173.)

Here then, the California state courts could reasonably conclude that because petitioner was represented by counsel he had no right to be personally heard regarding his motion for new trial, and that the pro se motion could be properly refused by the court.

56

1      Moreover, even assuming the trial court should have heard the motion for new trial, in

2   People v. Braxton, 34 Cal.4th 798 (2004), the California Supreme Court held that

3              a judgment of conviction may not be reversed and a new trial may
               not be ordered for a trial court's failure to hear a new trial motion
4              when a reviewing court has properly determined that the defendant
               suffered no prejudice as a result. This will occur when, for example,
5              the record shows that the trial court would have denied the new trial
               motion and the reviewing court properly determines that the ruling
6              would not have been an abuse of discretion, or the reviewing court
               properly determines as a matter of law that the motion lacked merit.
7              [Citations.]

8   Id. at 818.  Accordingly, the California Supreme Court could have concluded that even had there

9   been error, petitioner could not establish he suffered prejudice.  This conclusion is so because this

10  record reveals the trial court would have denied the new trial motion for it is based on the same

11  argument asserted at the time the prosecution's motion in limine was heard, to wit: that petitioner

12  was entitled to the defense afforded by the MMPA.  Petitioner's motion would have been

13  unsuccessful for the same reasons it was denied during pre-trial proceedings.  A court is

14  presumed to know the law, and it is clear from this record that the trial court was familiar with the

15  relevant law, including SB 420 and the guidelines referred to.  There is simply no reason to

16  believe that petitioner's motion for new trial differed from the arguments asserted in opposition to

17  the People's motion in limine.  Petitioner believed, and continues to believe, that he should never

18  have been charged or convicted of the underlying offenses because his actions were legal.

19  Nevertheless, petitioner is wrong.  Consequently, for the same reasons expressed in the

20  undersigned's findings regarding ground one of this petition (see subheading A, *ante*), the

21  California Supreme Court could have concluded that petitioner's motion for new trial lacked

22  merit.

23      To the degree petitioner argues trial counsel was ineffective for his failure "to join in

24  concert or articulate Petitioner's motion for a new trial" (ECF No. 24 at 51) or for failing "to

25  tender a motion for new trial on Petitioner's behalf" (ECF No. 24 at 52), he is mistaken.  As is

26  evident from the record, trial counsel made a tactical choice not to move for new trial on the basis

27  championed by petitioner.  That choice does not amount to ineffective assistance of counsel.

28  Strickland, 466 U.S. at 687-88; see also Rupe v. Wood, 93 F.3d at 1445 ("the failure to take a

futile action can never be deficient performance"); <u>Boatman v. Beard</u>, 2017 WL 3888225, at *23

(C.D. Cal. June 19, 2017) (no ineffective assistance for failure to file a motion for new trial where

the motion would have been meritless and futile), report and recommendation adopted, 2017 WL

3887851 (C.D. Cal. Sept. 1, 2017).

Furthermore, as previously noted, federal habeas relief is available only if a petitioner is

alleging that he is in custody in violation of the Constitution or laws or treaties of the United

States.  <u>See</u> 28 U.S.C. § 2254(a); <u>see also</u> <u>Estelle v. McGuire</u>, 502 U.S. at 67-68.  An alleged error

in the application of state law, such as state laws governing motions for new trial, is not

cognizable on federal habeas review.  <u>See</u> <u>Borges v. Davey</u>, 656 F.Appx. 303, 304-05 (9th Cir.

2016) (petitioner's "contention that the trial court misapplied state law in denying his motion for a

new trial is not cognizable on federal habeas review").  In California, "a motion for new trial in a

criminal case is a statutory right and may be made only on the grounds enumerated in section

1181 of the Penal Code, exclusive of all others."  <u>People v. Dillard</u>, 168 Cal.App.2d 158, 167

(1959).  Generally, "[f]ederal habeas courts lack jurisdiction ... to review state court applications

of state procedural rules."  <u>Poland v. Stewart</u>, 169 F.3d 573, 584 (9th Cir. 1999); <u>see also</u>

<u>Windham v. Merkle</u>, 163 F.3d at 1097 ("Whether the California Court of Appeal erred in its

application of [a state statute setting forth available appellate remedies] is a question of state law

that we cannot review.").  Moreover, merely labelling an asserted state law error as a due process

violation cannot "transform a state law issue into a federal one."  <u>Langford v. Day</u>, 110 F.3d at

1389.

Neither has petitioner alleged a cognizable federal claim based on his complaint that the

state court refused to hear his motion for new trial merely by citing <u>Hicks v. Oklahoma</u>, 447 U.S.

343 (1980), or by asserting a "state-created liberty interest."

First, <u>Hicks</u> does not apply here.  In <u>Hicks</u>, the Supreme Court held that the state had

violated a defendant's federal due process rights by failing to correct on appeal a sentencing

decision by a jury that had been instructed it had to impose a mandatory prison term that was later

found to be unconstitutional.  <u>Hicks</u>, 447 U.S. at 346.  The Ninth Circuit has rejected a broad

reading of <u>Hicks</u> that would permit habeas petitioners to characterize various other types of state

58

trial errors in different contexts as federal due process claims. See Gonzalez v. Wong, 667 F.3d 965, 995 (9th Cir. 2011) (holding that petitioner "reads Hicks too broadly" by invoking it to support a claim of prosecutorial misconduct during closing arguments) (citing Chambers v. Bowersox, 157 F.3d 560, 565 (8th Cir. 1998) (distinguishing Hicks and "reject[ing] the notion that every trial error ... gives rise to a claim under the Due Process Clause")). Petitioner reads Hicks too broadly in relying on it to allege a federal due process violation.

Second, petitioner's claim does not implicate a "state-created liberty interest." When "a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication — and federal courts will review the application of those constitutionally required procedures." Swarthout v. Cooke, 562 U.S. at 220. Here, however, the California courts have not held that the state has created a liberty interest from the rules governing a motion for trial. See People v. Davis, 10 Cal.4th 463, 524 n.22 (1995) (rejecting as "unpersuasive" an argument that a criminal defendant's entitlement to independent review as part of a motion for new trial creates a liberty interest); see also People v. Moreda, 118 Cal.App.4th 507, 514-15 (2004) (rejecting a similar argument that there is a state-created liberty interest in having a new trial motion based on insufficiency of the evidence decided by the same judge who presided over the trial).

"[A] state creates a protected liberty interest by placing substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249 (1983). California law does not require a trial court to reach any particular result in exercising its discretion in deciding a motion for new trial. See People v. Robarge, 41 Cal.2d 628, 633 (1953) ("In passing upon a motion for a new trial the judge has very broad discretion and is not bound by conflicts in the evidence, and reviewing courts are reluctant to interfere with a decision granting or denying such a motion unless there is a clear showing of an abuse of discretion"). The undersigned finds any limitations here do not amount to substantive limitations. And, in the absence of any substantive limitations on the trial court's discretion, Petitioner had no state-created liberty interest. See Olim, 461 U.S. at 249.

For the foregoing reasons, the undersigned finds the California Supreme Court's denial of the claim was not objectively unreasonable. 28 U.S.C. § 2254. Therefore, it is recommended that

petitioner's claim be denied.

VII.     Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 1, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/scot1957.157